BURNETT *v.* STATE.

Opinion delivered April 30, 1904.

1. CHARGE—REDUCTION TO WRITING.—The requirement of Const. 1874, art. 7, § 23, that judges "shall reduce their charge or instructions to writing on the request of either party," is not complied with where the judge delivered his charge orally, but directed the stenographer to take it down in shorthand and afterwards copy it in longhand, which was done after the trial.   (Page 400.)

2. SAME—ASSUMPTION OF CONCEDED FACT.—The assumption of a conceded fact in the court's charge is not error.   (Page 401.)

3. SEDUCTION—SUSPENSION BY MARRIAGE—SEPARATION.—Under Acts 1899, p. 23, enacting that if any man against whom a prosecution for seduction has begun shall marry the female alleged to have been seduced, such prosecution shall not be terminated, but shall be suspended, provided that if, at any time thereafter, the accused shall without cause desert such female, the prosecution shall be continued, etc., a prosecution for seduction which has been suspended by marriage cannot be renewed upon a separation by mutual consent unless the wife has offered to resume the marital relation, and her offer has been refused by the husband.   (Page 401.)

4. SAME—DESERTION—REVIVOR.—Where a husband, against whom a prosecution for seduction has been suspended by marriage of the injured female, has obtained her consent to a separation by such conduct towards her as rendered her condition intolerable, his conduct amounted in law to a desertion of her, after which the prosecution might be revived.   (Page 401.)

5. SAME—INSTRUCTION.—An indictment for seduction charged that defendant seduced the prosecutrix by virtue of "a false express promise of marriage." The court charged that it was sufficient if there was "a feigned or express promise of marriage," and refused to charge that there must have been a false express promise of marriage. *Held,* error.   (Page 403.)

Appeal from Pope Circuit Court.

OSCAR L. MILES, Special Judge.

Reversed.

STATEMENT BY THE COURT.

The defendant, Ira Burnett, was prosecuted for the crime of seduction, it being charged against him that in April, 1899, by virtue of a false promise of marriage, he seduced and obtained carnal knowledge of Fannie Burton, an unmarried woman of previous chaste character. After this prosecution was commenced against him, he and the prosecuting witness, Fannie Burton, were married, and the prosecution was suspended. Subsequently they separated, and the prosecution was renewed, and the defendant was tried and convicted upon an indictment charging him with the offense named. Judgment was rendered against him that he be imprisoned in the penitentiary for one year, and pay a fine of $1, from which judgment he appealed.

*Reid & Bruce, J. F. Sellers,* for appellant.

It was error for the court to refuse written instructions. 74 S. W. 513. Instructions in stenographic characters are not a compliance with § 23, art. 7, of the constitution. 52 L. R. A. 856; 76 Ind. 374; 21 Col. 272; 44 Kan. 583; 95 Ga. 243. The court's charge upon the facts invaded the province of the jury. 70 Ark. 319; 69 S. W. 621; 92 N. W. 40; 70 S. W. 272; 93 N. W. 819; 70 S. W. 424; 86 N. Y. 1057; 62 S. W. 1088; 46 S. W. 240; 8 Am. St. Rep. 869; 61 Am. St. Rep. 847. The instruction on the question of abandonment was incorrect. Acts 1899, p. 23; 5 Am. St. Rep. 901; 62 Am. St. Rep. 116; 60 Ark. 567; 96 U. S. 699; 35 Fed. 287; 29 Am. & Eng. Enc. Law, 114. The burden of proof was placed upon appellant, which was error. 38 L. R. A. 721; 33 Ark. 375; 59 Ark. 418; 52 Ala. 395; 72 S. W. 99, 423; 43 S. E. 370; 64 N. E. 980; 65 N. E. 120; 71 S. W. 1004; 99 Ill. App. 495; 68 S. W. 1057, 390; 14 Am. St. Rep. 44; 37 Ark. 593. It was error not to require the jury, before convicting the appellant, to find that the prosecuting witness yielded by reason and on account of a promise of marriage.

21 Am. & Eng. Enc. Law, 1048; 8 Am. St. Rep. 863; 40 Ark. 482; 69 Ark. 329; 25 Am. St. Rep. 738; 87 Am. Dec. 408; 80 N. W. 1064; 48 S. W. 192; 76 Am. St. Rep. 672.

*G. W. Murphy, Attorney General,* for appellee.

Riddick, J. (after stating the facts). This is an appeal from a judgment convicting the defendant of the crime of seduction. On the trial the presiding judge was requested to reduce his instructions to writing. He refused to do so, and delivered the charge orally to the jury, but directed the stenographer to take it down in shorthand as delivered, and afterwards to copy it in full from the notes thus taken. But this copy was not made, so the bill of exceptions state, "until after the trial." The first question presented is whether this procedure met the requirements of the law. The constitution requires that in jury trials judges "shall reduce their charge or instructions to writing on the request of either party." Const. 1874, art. 7, § 23. Now, while it may be said that taking the charge in shorthand is in a certain sense reducing it to writing, yet it seems clear that, taking the words of the constitution above referred to in their ordinary sense, they mean something more than this. And so it has been generally held that the requirement that a charge shall be reduced to writing is not fulfilled by merely taking it in shorthand. *Shafer* v. *Stinson,* 76 Ind. 374; *State* v. *Bennington,* 44 Kan. 583; *Crawford* v. *Brown,* 21 Col. 272; *Bowden* v. *Achor,* 95 Ga. 243.

It is probably true that most of the purposes for which this provision of the constitution was intended can be accomplished by the method adopted by the judge in this case. If the charge had been copied by the stenographer, and read by the judge to the jury before the case was finally submitted to them, it is probable that no prejudicial error would have been committed. *National Lumber Co.* v. *Snell,* 47 Ark. 407. But one purpose of this provision was to obtain a carefully considered charge and to place it in such a shape as to avoid any possible dispute or misunderstanding as to its exact praseology. Stenographers, like other persons, sometimes misunderstand what is said, and make mistakes; and, as comparatively few people can read shorthand, the parties under the procedure adopted in this

case would ordinarily have no means of guarding against and detecting such mistake. An instruction reduced to writing is open to the inspection of every one, and is the safeguard which the law gives the litigant to protect himself against controversies of that kind. The provision that secures it is imperative, and, even if we deemed it unwise, we could not disregard or refuse to enforce it. For these reasons we are of the opinion that the course pursued did not fully meet the requirements of the law, and the contention of appellant in regard thereto must be sustained.

The court in his charge to the jury said that "the testimony in this case tends to show that subsequent to the returning of the indictment against the accused he married the prosecuting witness, and in that way the prosecution was suspended." Now, as a matter of fact, the record here shows that the indictment copied in the transcript was not found until over a year after the marriage of the parties referred to. Whether there was a previous indictment, not shown by the record, we are not able to say, but it is obvious that this statement worked no prejudice to the defendant, for it seems to be conceded that the prosecution against defendant had commenced before his marriage to the prosecuting witness. Counsel for defendant do not object to the statement on account of the inaccuracy noted, but they say that it was an invasion of the province of the jury for the trial judge to tell them that a prosecution had been instituted against the defendant which was suspended by his marriage to the prosecuting witness. But the record seems to show that these facts were conceded at the trial, and undisputed facts may always be stated to the jury by the presiding judge, when it is necessary for him to do so in order that they may understand the issues presented for their decision. The purpose of a jury is to determine issues concerning disputed facts, and it is not only unnecessary, but often improper and prejudicial, to submit undisputed facts to the jury as if they were in issue. *St. L., I. M. & S. Ry. Co.* v. *Tomlinson,* 69 Ark. 489; *Pacific Life Ins. Co.* v. *Walker,* 67 Ib. 147.

The evidence showed that after the parties had been married some months they entered into and signed a written agreement to separate, and thereafter they lived separate and apart.

Now, the act of 1899 provides that "if any man against whom a prosecution has begun * * * for the crime of seduction shall marry the female alleged to have been seduced, such prosecution shall not be terminated, but shall be suspended; provided, that if at any time thereafter the accused shall willfully, and without such cause as now constitute[s] a legal cause for divorce, desert and abandon such female, then at such time said prosecution shall be continued and proceed as though no marriage had taken place between such female and the accused." It will be noticed that under this statute, after the marriage is consummated, the prosecution cannot be continued against the husband unless he has deserted the wife. The statute says "willfully" deserted and abandoned, but, as desertion is the willful separation of one of the married parties from the other without lawful cause, it is plain that the word "willfully" adds nothing to the statute. 1 Bishop on Marriage, Divorce & Separation, § 1665. And as, in law, a separation by mutual consent is not desertion on the part of either unless one of the parties offers to resume cohabitation and the offer is refused, it follows that the prosecution cannot be revived under this act when the parties have separated by mutual consent unless the wife has offered to resume the marital relation, and her offer has been refused by the husband. Lloyd's Law of Divorce, p. 172. But a mere formal consent to the separation on her part will amount to nothing if she has been compelled thereto by the wrongful acts of her husband. "If by pressure and unfair means," says Mr. Bishop, "a husband obtains his wife's agreement to a separate living, this termination of the cohabitation, to which her consent is not real, being brought about by his will, is a desertion of her by him." 1 Bishop on Marriage, Divorce & Separation, § 1690; *Warner* v. *Warner,* 54 Mich. 492; *Dagg* v. *Dagg,* 7 Prob. Div. 17; Lloyd's Law of Divorce, 172; 9 Am. & Eng. Enc. Law (2d Ed.), 770, and cases cited. And so in this case, if the defendant, with the intention of forcing his wife to agree to a separation, commenced and carried out a course of conduct towards her, such as unmerited reproach, rudeness, contempt and neglect, which rendered her condition in life intolerable, and caused her to consent to the separation against her

real wishes, this, being brought about by his wrongful conduct, would in law be a desertion on his part, after which the prosecution against him can be revived. The instruction of the court on this point was substantially correct.

The presiding judge in his charge read to the jury section 1900 of Sandels & Hill's Digest, upon which the prosecution was based. This section declares that "any person who shall be convicted of obtaining carnal knowledge of any female by virtue of any feigned or pretended marriage, or of any false or feigned express promise of marriage," shall be punished as therein provided. After reading this section, he told the jury that if they found from the evidence beyond a reasonable doubt that the defendant "seduced the prosecuting witness, Fannie Burton," under "a feigned or expressed promise of marriage," they should convict. This part of the charge—probably because it was oral, and the stenographer failed to catch the exact words used—does not follow the words of the statute, for the language of the statute is "any false or feigned express promise of marriage." The statute requires that there must be an express promise of marriage, whether it be false or feigned, and the indictment charges that there was "a false express promise of marriage." But the court, in effect, told the jury it was sufficient if there was "a feigned or express promise of marriage." This would probably have worked no harm if the court had given the first instruction asked by the defendant, which, in effect, told the jury that, before they could find the defendant guilty, they must find beyond a reasonable doubt that by reason of a false express promise of marriage he induced Fannie Burton to have sexual intercourse with him. The presiding judge refused this instruction on the ground that he had already covered it in his charge. He had told the jury, if they found beyond a reasonable doubt that the defendant seduced Fannie Burton under "a feigned or express promise of marriage," to convict. The instructon asked by the defendant was a counterpart of that given by the court, and might be inferred from that, if we overlook the slight departure from the statute made by the court, and to which we have called attention. But in a trial before a jury a defendant is entitled to have the law plainly

and fully stated to the jury, to avoid any possible misunder-standing on their part, and we think this instruction No. 1 should have been given.

We do not think, as contended by defendant in some of the instructions asked by him, that the promise of marriage must have been made or repeated at the time the act of sexual intercourse took place. It is sufficient that it was previously made, and that the defendant thereby induced the woman to have sexual intercourse with him.

Judgment reversed, and cause remanded for a new trial.