## Case No. 4,526.

### ESLAVA v. BANK OF MOBILE.

## Case No. 4,527.

### ESLAVA v. MAZANGE'S ADM'R et al.

[1 Woods, 623; [1] 3 Chi. Leg. News, 297.]

Circuit Court, S. D. Alabama. April Term, 1871.

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

Alex. McKinstry, for complainant.

Geo. N. Stewart, J. Little Smith, A. R. Manning, and Percy Walker, for defendants.

BRADLEY, Circuit Justice. The bill is filed in this case to subject certain property, conveyed by the complainant to Ovid Mazange many years since, to a parol trust, in favor of the complainant, on which, as he alleges, the conveyance was made. The Bank of Mobile is made a defendant because it has an execution against Eslava which has been levied on the property in question. On filing the bill and before issuing the subpoena, the complainant obtained an order to examine himself and his wife as to any transactions with or statements by Ovid Mazange, deceased, upon interrogatories to be served on the parties to the suit, or upon notice to them, before some commissioner of the United States. The rule suggests that Eslava and his wife are aged and infirm, and reside in New Orleans. As soon as issue was joined in the cause, the defendants gave notice to the complainant that they desired the testimony in the case should be taken orally, under the 67th rule of the court, and soon after filed written objections to taking the testimony of the plaintiff and his wife on the grounds, amongst others, that the complainant was not a competent witness in the case (Mazange being dead), and that the wife could not be a witness for her husband. The complainant's counsel, nevertheless, after this, proceeded to file and serve interrogatories with a view to examine the complainant and his wife on commission. The defendants filed cross interrogatories under protest. The examination having been taken and the depositions returned, the defendants at the last term moved to suppress the same. The motion, not being disposed of, is now repeated. One ground of the motion is, that the complainant and his wife are not competent witnesses in the case.

In general the competency of witnesses in the United States courts in civil cases is governed by the law of the state in which the court is held. Such was the rule enacted by the statute of July 6, 1862 (12 Stat. 588). But congress has specially regulated the subject now before the court. By the act of July 2, 1864 (13 Stat. 351), it was declared, amongst other things, that there should be no exclusion of any witness in the federal courts because he was a party to, or interested in, the issue tried. This act was modified by that of March 3, 1865 (13 Stat. 533), by which it was enacted that in actions by or against executors, administrators, or guardians, neither party should be allowed to testify against the other as to any transaction with, or statement by, the testator, intestate or ward unless called to testify thereto by the opposite party, or required to testify thereto by the court. This act is a recognition of the glaring injustice it would involve, to permit one party to propound himself as a witness in his own behalf as to a transaction between him and a deceased person, who can no longer give his version of the affair. If the law were to allow a man to wait until his antagonist were dead, and then to sue his heirs, and put himself upon the witness stand and give his version of the affair, with no one to contradict or qualify his testimony, it would be as gross a prostitution of the forms of law, as to allow a man to be judge in his own cause. Every honest mind revolts against it. There may be special cases, it is true, in which the court can see that no injustice would be done by calling on a party to testify, even though his adversary be deceased. But it is useless to attempt to anticipate such cases. When they arise it will be for the court, and not the party himself, to suggest that he be called. Or, if he make the suggestion, the other party ought at least to be heard upon it.

It is claimed in this case that the court has made an order to take the testimony. But how was it made? It was an ex parte order taken before the defendants were subpoenaed to appear in the cause. When the statute authorizes such testimony to be taken if "required by the court," it does not refer to such a requirement or order as that which was made in this case. If an ex parte order can be got in this way, the statute would be practically abrogated. The reservation of power in the court to require the evidence to be taken was made in order to provide for such extreme and special cases as might arise, in which it would be a great hardship not to take it. The court will exercise this power with great care and caution. This case is one in which it would be eminently improper to allow the evidence. The complainant seeks to set up a parol trust in property conveyed away by him over twenty years ago, and possessed by the grantee and his assigns ever since. It would be most dangerous to allow a party to prove his own case under such circumstances, after his grantee was dead. Whether it is provable at all is another question, not now before the court. But no man's property would be safe under such a rule of evidence. Of course, the wife is incompetent to testify for or against her husband. The fact that the Bank of Mobile has filed a cross bill in the case can make no difference. The order to examine the parties is taken on behalf of the complainant, not on behalf of the bank, and, if it were taken on behalf of the bank, it would not help the case. The bank is not the "opposite party" referred to in the act who is authorized to call the plaintiff as a witness. The "opposite" party meant is that party against whom the evidence is sought to be used. The interests of the complainant and of the bank in the matter are the same. The testimony is clearly incompe-

tent and must be disallowed, and the depositions suppressed.

It is urged that the witnesses were òld and infirm, and, therefore, that the order to take their testimony was strictly regular under the 70th rule in equity. That rule was not originally intended for the examination of a party; and it may be questioned whether, under any circumstances, it ought to be extended to the case of a party propounding himself as a witness. But it certainly cannot legalize testimony taken as the plaintiff's has been taken in this case. It may also be urged that the order for taking the testimony must stand until it is regularly discharged. It is undoubtedly the general rule that, after the close of the term in which an order is made, it must stand until it is regularly discharged. But orders obtained upon motion may be discharged upon motion; and a fortiori, orders obtained ex parte may be thus discharged which have never been assented to, but always resisted by the other party; and a motion to suppress depositions fairly brings up the regularity of an ex parte order directing them to be taken, as well as the competency of the witnesses examined, if the party moving to suppress has never done anything to waive the objection.

From an examination of the minutes and files in this case, I am satisfied that the defendants have taken every opportunity fairly in their power to express their opposition to the testimony of these parties, as well as to the taking of it by deposition. The motion to suppress the depositions will be granted; but, as they were taken under an order of the court, though an irregular order, the cause will be continued until the next term, and the time for taking testimony enlarged until the rule day in September, to enable the complainant to take other testimony in the cause, with like liberty to the defendants.