# OCKSTADT v. BOWLES.

EVIDENCE; CONTRACTS; SPECIFIC PERFORMANCE; EQUITY; RESULTING TRUSTS.

1. Where it is desired to have the complainant, who was a party to a transaction or contract with a deceased person, testify thereto, it would seem that the proper practice is to move the court, on notice to the opposite party, for an order calling the complainant to testify, and not to take the testimony over the objection of the defendant, and then move the court to make an order directing that the testimony shall be considered with the same effect as if the witness had been called to testify by the court.

2. While an oral agreement to transfer land by will is equally as enforceable as one to transfer by deed, where there is satisfactory proof of the agreement itself, and of the performance of acts thereunder by the party to whom the promise has been made, in obvious reliance upon such promise, so as to render the restoration of his condition

impracticable (*Whitney* v. *Hay*, 15 App. D. C. 165, s. c. 181 U. S. 77, 45 L. ed. 758, 21 Sup. Ct. Rep. 537),—where such equities are not shown, specific performance of such an agreement will be denied.

3. In a suit by a husband against the heir at law of his deceased wife, to enforce specific performance of an alleged agreement by her to devise land· to ·him, declarations by the deceased of an intention to .make ample provision for the complainant in her will, and also showing that he had been a kind husband, and had always turned over his earnings to her, will not support an allegation in the bill that she had entered into such an agreement with him, in consideration whereof he had aided her in paying for improvements on the land; especially where it is shown that she died after nine years of married life, and had been warned a short time before her death by her physician that she would probably not live much longer and yet had not made a will.

4. Where a husband pays the consideration and has a conveyance of the purchased property made to his .wife, the presumption is against a resulting trust for his benefit, and the proof to overcome this presumption must be clear and satisfactory (following *Cohen.* v. *Cohen*, 1 App. D. C. 240; *McCormick* v. *Hammersley*, 1 App. D. C. 313; *McCartney* v. *Fletcher*, 11 App. D. C. 1) ; and the presumption is stronger against a resulting trust in the husband's favor, where the property  conveyed to the wife was bought with money delivered by him to her, whether derived from his earnings or not, in view ·of the fact that he was under a direct legal obligation to support her.

5. Where, in a suit by the' surviving husband against the heir at law of his ' deceased wife for· specific performance of an alleged agreement with her,·.whereby, in consideration of his paying to her his earnings, to be used in the improvement of certain lots owned by her, she was to devise one of the lots to him, the court below refused to specifically enforce the contract, but held that the complainant was entitled to compensation, and confirmed a report of the auditor to whom the matter was referred which gave the husband credit for $600 paid in cash by him to his wife and $50 a month for nine years, which constituted his entire earnings for that period, and charged him with $2,850, the value of other property purchased by her during the marriage and conveyed to him,—it was *held* by this· court, upon a review of the evidence, reversing the decree confirming the auditor's report, that, although the husband testified that he paid all of his earnings to his wife, he failed to account for his own expenses during the period covered, and he was not entitled to claim support of his wife and that, giving him the benefit of every· inference, it did not appear that he contributed to the improvement of the property more than the value of the property for which he had been given credit.

6. *Quære,*—whether, under such circumstances, a court of equity, in refusing specific performance of the alleged agreement, should retain the bill of complaint for an award of compensation in lieu thereof, instead of remitting the complainant to a court of law.

No. 1994. Submitted October 22, 1909. Decided November 15, 1909.

The COURT in the opinion stated the facts as follows:

This suit was begun by George W. Bowles, surviving husband of Catherine Bowles, deceased, against George Ockstadt, sole heir at law of said Catherine, to compel the execution of a title to certain lands in the city of Washington, or else to establish a lien thereon. It appears from the admitted allegations of the bill that George W. Bowles married Catherine Ockstadt June 29th, 1892. She was the widow of George L. Ockstadt, deceased, and had one child, who is the defendant in the bill and appellant here. At the time of said marriage said Catherine was the owner in fee of a part of lot 15 in square 894, that had been conveyed to her April 17th, 1892 by the parents of her deceased husband. Said lot is 34 and 16/100 feet wide, and 109 and 8/100 feet in depth. The purchase price was $3,500. Adjoining this aforesaid lot there was another, and 19 and 64/100 feet wide, and 109 and 8/100 feet deep, of which George L. Ockstadt was owner in fee at his death. The title thereof passed to defendant, his only heir at law, subject to the dower of said Catherine therein.

The bill alleges that the negotiations for the purchase of the first-described lot were commenced after complainant had become engaged to marry the said Catherine, and that the purchase was a matter of discussion between them; that it was understood and agreed between them that two substantial brick residences should be erected on the first described lot, and another on the last described one. The defendant was then sixteen years of age.

That it was agreed between complainant and said Catherine at the time of the purchase of the lot aforesaid, and after their marriage, that the necessary funds to erect three houses should

be raised by encumbering said first lot; that the indebtedness thereby created should be paid by complainant and her by their united efforts and earnings, or such funds as either might thereafter acquire; and that in consideration of complainant's applying the money which he then possessed, and his further earnings and income, to the liquidation of the indebtedness contracted for building, as aforesaid, the said Catherine would, by her last will, devise the said lot to the complainant in fee.

That pursuant to said agreement the said Catherine during April, 1892, began the erection of the said three houses, having entered into a contract therefor for the sum of $9,500, and, for the purpose of raising the necessary money, on June 11, 1892, she conveyed said first lot to trustees to secure a loan of $4,000 made to her by Charles Walter, for which she executed her note, payable three years after date, with interest at the rate of 6% per annum, payable semiannually.

That, for the purpose of raising additional funds to complete said houses, on February 27, 1893, said Catherine and complainant executed another conveyance to said trustees of said lot in trust, to secure Charles Walter in the additional sum of $3,000, for which complainant and said Catherine executed their joint note. That said three houses were completed at a cost of $9,743, and when completed the lot on which the first two were erected was subject to the said encumbrances amounting to $7,000.

That, relying upon the agreement aforesaid, complainant delivered to said Catherine $600 of his own money, which was applied in paying the charges for said houses, and thereafter applied all of his earnings and income to the discharge of said encumbrances, which were finally paid off and released, the first on January 9th, 1895, and the second in February, 1901. That complainant fully performed his part of said agreement. That defendant on May 17th, 1892, conveyed the second lot, with improvements thereon erected, as aforesaid, to trustees for certain purposes. That by decree passed in October, 1899, said trust conveyance was set aside in a proceeding begun by certain creditors of defendant, and thereafter said Catherine, on Novem-

ber 13th, 1899, obtained a conveyance of the title thereof to her. That said Catherine died suddenly on March 2d, 1902, having executed no will, though prior to death she had frequently expressed her intention to do for the purpose of carrying out said agreement. That defendant has refused to recognize the right of complainant, and has entered into possession of all of said property as heir at law of said Catherine, and is collecting the rents and revenues thereof to the exclusion of complainant.

The bill concluded by waiving an answer under oath, and prayed the appointment of a receiver to collect the rents of the property and manage the property pending suit. It prayed for a decree requiring defendant to convey to complainant the said first-described lot, and further that, if it be held he is not entitled to said conveyance, he be decreed compensation for the amount expended by him upon both of said lots, and that the same be sold for the purpose of enforcing the same.

Defendant answered under oath denying the allegations, as to said agreement, and the payment of any money by complainant for the improvement of said property or the payment of said encumbrances. He alleged that at the time of the marriage aforesaid, complainant had no money, and was employed in driving a wagon for wages of $12 per week; and that said Catherine was engaged in business for herself and made money thereby. That after said marriage said Catherine purchased premises No. 1121 I street, N. E., and the title thereto was executed to complainant, who now owns and possesses the same. Testimony was taken in support of the bill. By this it was shown that the contract for the erection of the houses was made by Catherine Ochstadt in April, 1892, for the erection of the houses for $9,500, and that the total cost of the improvements was $9,743.25. The first deed of trust described in the bill was made June 11th, 1892, and was introduced with the note secured thereby. The second deed of trust, executed by complainant and said Catherine on February 27th, 1893, was also introduced with the joint note of $3,000 secured thereby. It appeared also that the lot on I street had been conveyed to complainant in 1898, and that the amount paid therefor was $2,

850.  The testimony of several witnesses tended to show declarations by said Catherine, at various times, to the effect that complainant had turned his earnings over to her, and that she intended to remember him in her will.  The evidence will be stated in the discussion of its effect at a later stage.

  The complainant was introduced and examined as a witness, over the objection of the defendant.  His testimony tended to show the parol agreement alleged by him, and the payment of his wages and income to said Catherine, and the use of the same in paying for said houses.  At the preliminary hearing on this evidence, the court entered a decree, in which it is recited first, that the court, being of the opinion that the complainant should be called by the court to testify to the agreement and transactions between him and his wife Catherine Bowles, deceased, under and by which it was agreed that she should devise to him the real estate mentioned, it is "ordered that so much of the said deposition of said George Bowles taken therein as relates to the said agreement and transactions between him and his said deceased wife, be considered with the same effect as if he had been called to testify thereto by the court."  It was then further decreed that the complainant is entitled to be compensated from and out of the real estate described as said first lot, in such sum as was contributed by him towards the construction of said three houses, and paying of the encumbrances thereon, it being stipulated that in consideration of the release of said second lot, and improvements thereon, from the force and effect of this decree, that such sum, if any, as may have been contributed or expended by complainant thereon be reimbursed out of the first-described lot.  The cause was then referred to the auditor to ascertain and report the amount contributed by complainant, and the amount to be deducted therefrom; and that the auditor be authorized to take such additional evidence as might be submitted by the parties pertinent to said inquiry, and that in the taking of such additional evidence the said complainant is called by the court to testify as to any amount expended by him as aforesaid.  This order was entered April 14th, 1908.  It does not appear that any witnesses were examined

by or before the auditor, who filed his report November 4th, 1908. The account stated by him credits complainant with $600 delivered to his wife June 30th, 1892, and with subsequent payments of $50 per month for nine years, amounting in the aggregate to $6,000. He then charges him with the value of the I street house, $2,850, and reports the balance due him as his contribution to the payment of the cost of said houses, and the discharge of encumbrances to be $3,150.

The defendant filed exceptions to this report on the following grounds substantially: 1. That the testimony of complainant as to his transactions with his deceased wife were incompetent, and should not have been considered. The second and third are substantially on the same ground. 4. That the auditor erred in allowing the complainant the full amount of his wages as contribution to the said improvements, because it does not appear that he did not contribute to the support of his family therefrom, and because he did not receive such wages during said entire period. 5. That the testimony does not show that complainant contributed any part of the sum of $6,000 to the erection of said houses; and shows that whatever money he gave to his said wife was a gift, and in the nature of a settlement upon her. These exceptions were heard and overruled December 10th, 1908, and a decree was entered confirming the report, declaring a lien on the said first lot to the amount of $3,150, and directing it to be sold by trustees, named in the decree, unless within thirty days the said sum with interest from September 1, 1903, be paid by the defendant.

*Mr. James E. Padgett* and *Edwin Forrest* for the appellant.

*Mr. Leon Tobriner* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

From this decree the defendant has appealed.

1. The first question raised by the assignment of errors re-

lates to the competency of the testimony of complainant as a witness on his own behalf. Where one of the original parties to a transaction or contract has since died, become insane, or otherwise is incapable of testifying in relation thereto, the other party thereto shall not be allowed to testify as to any transaction with, or declaration or admission of the said deceased, or otherwise incapable party in any action between him, or any person claiming under him, and the executors, heirs, etc., or other person legally representing the deceased or incapable person, unless he can be called to testify thereto by the opposite party, or the opposite party first testify in relation to the same, or unless the contract or transaction was made by or had with an agent of the deceased or otherwise incapable party, and said agent testifies in relation thereto, or "unless called to testify thereto by the court." Code, article 1064 [31 Stat. at L. 1357, chap. 854]. None of these exceptional conditions existed when complainant's deposition was taken before the examiner who noted defendant's exceptions to the competency of the witness, which was all that he had authority to do. At the preliminary hearing the defendant objected to the consideration of the deposition. Clearly, the witness was not competent to testify relating to a contract with, or declarations by the deceased, at the time that his deposition was taken, for he had not then been called to testify thereto by the court. It would seem that the proper practice, where the testimony is taken in the ordinary course of equity procedure, is to move the court for an order calling the party to testify with notice to the opposite party. *Robinson v. Mandell,* 3 Cliff. 169–176, Fed. Cas. No. 11,959; *Eslava v. Mazange,* 1 Woods, 623, Fed. Cas. No. 4,527. The statute is a salutary one to prevent the great injustice that would so often result from permitting one party to testify as a witness on his own behalf as to transactions between him and a deceased person, whose version of the same could not be given. The reservation of the power in the court to call the party to testify was made in order to provide for such extreme and special cases as might arise, in which it would be a great hardship not to do so. The power is not to be exercised as a matter of grace, but with

great care and caution. *Eslava* v. *Mazange*, 1 Woods, 623–626, Fed..Cas. No. 4,527, per Mr. Justice Bradley. When the deposition, taken without leave, was offered at the hearing and objected to it was ordered "to be considered with the same effect as if he had been called to testify thereto by the court." It is argued that as the court had all the depositions before him, and could from the competent testimony then best determine whether there was such a case of hardship as to call for the exercise of the discretion confided by the statute, the order was equivalent to one made on preliminary motion, calling the witness to testify. On the other hand, it is argued that the power to call a party to testify is not satisfied by an order to consider his previously taken testimony, as if he had been called by the court to testify.

The question is a difficult one, but, in the view we have taken of the case on its merits, we do not find it necessary now to determine it.

2. An oral agreement to transfer title to land by will is equally enforceable with one to transfer by deed, where there is satisfactory proof of the agreement itself, and of the performance of acts thereunder by the party to whom the promise has been made, in obvious reliance upon such promise, so as to render a restoration of his condition impracticable. If such equities were denied recognition, injustice of the kind which the statute of frauds cannot be thought to have in contemplation would follow. *Whitney* v. *Hay*, 15 App. D. C. 164–184, s. c. 181 U. S. 77, 45 L. ed. 758, 21 Sup. Ct. Rep. 537. The evidence fails to show such equities, and the trial justice was clearly right in refusing the specific performance prayed for. The testimony of the complainant himself falls short of establishing the particular agreement with the requisite certainty, and is rather weakened than reinforced by the testimony of the other witnesses offered by him. These testify to declarations of the said Catherine of an intention to make ample provision for the complainant in her will, but no declaration shows that she had entered into an agreement to devise her property to him. The declarations go no further than to show that she had been very happy

with complainant, who had been a kind husband; that he had always turned his earnings over to her; that what he had was hers, and what she had was his; and that she intended to provide for him in her will. The inferences deducible from them all taken together are that she intended this provision by way of bounty, and not in performance of any agreement or contract. Notwithstanding these declarations of intention, she died intestate, after nine years of married life, with no excuse for failing to make a will, although she had been warned by her physician, not long before her sudden death, that she would probably not live much longer.

3. The substantial question to be determined is whether there is sufficient evidence to sustain the decree awarding compensation to complainant in the sum of $3,150 for money contributed by him to the improvements made upon the wife's land, and to the discharge of encumbrances thereon. The court found, as stated in the order of reference to the auditor, that while specific performance of the alleged contract was denied there was sufficient evidence to show that the complainant had paid money for the purposes aforesaid, under some agreement with his said wife, and the auditor was directed to state and report an account thereof. Founded on the deposition of the complainant, the auditor stated the account crediting the complainant, first, with $600 contributed by him on the day after the marriage, and next with the entire amount of his wages for nine years at the rate of $50 per month, namely, $5,400. The sum of $6,000 was charged with the value of the I street property, namely, $2,850, leaving a balance due complainant of $3,150.

It is a settled principle that where a husband pays the consideration, and has a conveyance of the purchased property made to his wife, the presumption is against a resulting trust for his benefit, and the proof to overcome this presumption must be clear and satisfactory. *Cohen* v. *Cohen,* 1 App. D. C. 240, 244; *McCormick* v. *Hammersley,* 1 App. D. C. 313–320; *McCartney* v. *Fletcher,* 11 App. D. C. 1–11.

The rule applies with even stronger force in a case like this, where the husband delivers money to the wife, whether derived

from his earnings or otherwise, when we consider that he is under the direct legal obligation of support and maintenance.

In considering the evidence it must be remembered that the property was acquired and paid for by the wife before the marriage, and she had entered into a contract to erect the two houses, and obtained a loan of $4,000 for the purpose. At the date of the marriage the work was ready for laying the first floor. She was evidently a thrifty woman, and was engaged in an apparently profitable business. So far she had acted upon her own responsibility. The complainant, at the time of the marriage, was receiving wages of $50 per month, as the driver of a wagon. He testifies that he had accumulated $600, which he turned over to his wife on the day after the marriage. After about two years he gave up the wagon-driving and opened a market stand. Having run this for some time he gave it up, and began driving the wagon again for the same wages. During the whole time the wife was carrying on her business in the Centre Market, and was occasionally assisted by complainant and her son. Complainant gave no evidence of a bank account before or after the marriage, and no written evidence of the possession and payment over of the $600. Statements from the books of several building associations of which Mrs. Bowles was a member were produced by officers of the same, who testified as witnesses. The deposits were in her name. The first entry is one of January, 1896, $50. March and May show deposits of $200 each. The remaining deposits extending from January, 1897, to February, 1902, are—with the exception of October, 1897, $75, and June, 1898, $100—in sums of $25, $20, and $10. Another statement of deposits by Mrs. Bowles commences in September, 1891, with $400. Deposits in another, ranging from $500 to $50, were shown from October, 1891, to July, 1895. After that the deposits to February, 1902, show sums of $50 and $25, save that in December, 1895, there was one of $150, and in December, 1896, $850. These moneys were from time to time paid by check to Mrs. Bowles. The only record of a deposit by complainant is that of $10 in May, 1901, and that was to his own account. After the death of his wife complainant re-

ceived a check from one of the associations June 11, 1902, of $103.50. Later, as administrator of her estate, he received the sum of $1,225.66. The building lien and encumbrances had long before been discharged. Upon the unsupported evidence of the complainant he was given credit for his entire wages for nine years, notwithstanding that for a period he was not receiving wages at all, and without any deduction whatever for his own necessary incidental expenses for clothing and support. It is true the complainant testified that the whole of his earnings were paid over to the wife, but he does not account for his own expenses during the period. He was certainly not entitled to claim support of his wife. That he paid his earnings over to his wife, who seemed to have managed all of the family affairs, is established by her declarations, but what proportion of them went to his support nowhere appears. Assuming that in addition to his net earnings he contributed the $600, which was used in paying for the houses, we find no evidence sufficient to show that these amounted to more than the sum of $2,850 that was the cost of the I street property, which was conveyed to him. Giving him the benefit of every inference that can justly be deduced from the evidence, we cannot find that the complainant contributed to the fund more than the sum of $2,850, represented by the purchase of the I street property. As this property was conveyed to him alone, and he needs no relief from a court of equity to assist or quiet his title thereto, we are of the opinion that the auditor's report should have been rejected, and a decree entered dismissing the bill.

4. A serious question has been raised as to whether, after refusing specific performance of the alleged agreement, the equity court should have retained the bill for an award of compensation in lieu thereof, instead of remitting the complainant to a court of law for the further remedy. The point was not made in the court below, and error has not been specifically assigned thereon. We have not considered it necessary to pass upon the question, and it is not to be inferred from our determination of the case on its merits that we have incidentally affirmed the further jurisdiction of equity in the premises.

For the reasons given the decree will be reversed with costs, and the case remanded, with directions to set aside the auditor's report and dismiss the bill.      *Reversed.*