### JOSEPHS, EXECUTOR *v.* BRIANT.

Opinion delivered December 7, 1914.

1. CONTRACTS—SUPPRESSING EVIDENCE—VALIDITY.—A contract to procure certain letters for deceased is valid, if the plaintiff had no knowledge that the defendant desired the possession of the letters in order to suppress them as evidence in an action pending against him, or to be brought against him. (See *Josephs* v. *Briant*, 108 Ark. 171.)

2. APPEAL AND ERROR—INSTRUCTIONS—OMISSIONS AND CONFLICT—SPECIFIC OBJECTION.—Plaintiff brought an action to recover from defendant's estate a sum of money due on a contract, whereby plaintiff had agreed to procure certain letters for deceased. The issue involved was as to whether the plaintiff knew deceased's purpose in seeking the procurement of the letters, either that the letters were to be used to enable deceased to win a lawsuit, or to be suppressed as evidence by him; *held*, an instruction which declares that plaintiff may recover unless she knew the letters were to be used to win a lawsuit, and omitted to charge the jury on the issue of plaintiff's knowledge as to the suppression of the letters as evidence, will not be held prejudicial, when the point is prop-

*For dissenting opinion by Hart, J. see *infra* page 601.

erly covered in all other instructions given, and when defendant failed to raise the point by specific objection.

3.  EVIDENCE—PERSONAL KNOWLEDGE OF WITNESS—POSTMASTER.—It is proper for a postmaster to testify that deceased registered and mailed a letter to plaintiff, where he has personal knowledge of the facts, and when the United States postoffice regulations prohibit him from taking his records out of his office.

4.  EVIDENCE—LETTERS—IDENTIFICATION.—Evidence of persons who knew deceased and his method of writing and constructing letters is admissible to show that certain letters alleged to have been written by deceased, had in fact been written by him. Evidence as to peculiar methods of spelling and construction of letters by an illiterate person is admissible.

5.  EVIDENCE—LETTERS—ADMISSIBILITY OF COPIES.—Copies of letters, the originals of which were introduced in evidence in a former trial of the cause, are admissible when it is shown that the originals had been lost, that the copies introduced were copies of originals which bore the genuine signature of the party alleged to have signed them.

6.  WITNESSES—COMPETENCY—TRANSACTIONS WITH DECEASED.—Plaintiff brought an action to recover on a contract made with deceased. Testimony of plaintiff that she received three letters signed "A. W. Shirey," that one contained a twenty-dollar bill; that all were postmarked at Minturn, Ark., and that the envelopes had on them what purported to be the printed letterhead of A. W. Shirey, and were received by plaintiff in due course of mail, *held*, not to be testimony of a transaction with deceased within the meaning of section 2, Schedule to the Constitution of 1874.

7.  APPEAL AND ERROR—ORAL INSTRUCTIONS—HARMLESS ERROR.—Any error committed by the trial court in giving an oral instruction when requested by defendant to give the same in writing will be cured by the action of the court in giving a written instruction covering the issues stated in the oral instruction.

8.  EVIDENCE—SUIT ON CONTRACT—ACCOUNT—ADMISSIBILITY.—In an action by plaintiff on a contract with deceased to procure certain letters for him, an account filed against deceased's estate is admissible, as showing that plaintiff knew that she was securing the letters for defendant for an illegal purpose.

Appeal from Lawrence Circuit Court, Eastern District; *R. E. Jeffery,* Judge; affirmed.

STATEMENT BY THE COURT.

A. W. Shirey died at his residence at Minturn, in Lawrence County, Arkansas. On July 19, 1910, there-

after, Mrs. Mai Briant presented to the probate court of that county the following claim:

"*Mrs. Mai Briant* v. *the A. W. Shirey Estate.* To legal services rendered to the said A. W. Shirey during his lifetime in the suit for divorce in which he was involved, said services being rendered at his request and solicitations.

### ACCOUNT.

To trip from Hope to Minturn, Jonesboro and other places and securing evidence which was to be used in his said suit for divorce, $10,000.

The proof will show that Shirey in his lifetime and not long before his demise employed Mrs. Briant to do certain work, and on his own motion agreed to pay her $10,000.''

This claim was sworn to by Mrs. Briant and the full amount of it was allowed by the probate court. On appeal to the circuit court, the plaintiff again obtained a judgment for the full amount, but on appeal to this court the judgment was reversed and the cause remanded for a new trial. See, *Josephs* v. *Briant,* 108 Ark. 171.

Upon the retrial of the case in the circuit court, the plaintiff, Mrs. Briant, testified substantially as follows:

I knew A. W. Shirey in his lifetime; he was my mother's uncle; for twenty-one years before his death, I visited him every year at his home in Minturn, Lawrence County, Arkansas; somewhere about the 27th, 28th or 29th of April, 1909, while I was at Hope, Arkansas, I received a registered letter containing a twenty-dollar bill, and this was the only registered letter I received about that time; the letter was postmarked at Minturn, Arkansas, and was signed, "A. W. Shirey;" it was addressed to Mrs. Mai Sparks Briant, Hope, Arkansas, and in addition to the postmark of Minturn, there was printed on the envelope, "A. W. Shirey, General Merchandise, Minturn, Arkansas;" the envelope contained a twenty-dollar bill; later on during the year I received two other letters postmarked Minturn, these letters arriving while I was

at Harrisburg, Arkansas, and the postmark on the letter at Harrisburg was a day later than the postmark of Minturn; these letters were received by me in due course of mail and bore the signature, "A. W. Shirey."

After I received the first letter above referred to, I made an appointment with Madame Rupert, a fortune teller of Little Rock, and procured from her some letters signed by A. W. Shirey; after securing the letters, I mailed them to Mr. Shirey at Minturn, Arkansas.

It was shown to the satisfaction of the court that the letters above referred to had been lost and copies of them were admitted in evidence. They were written on a typewriter, and are as follows:

"A. W. Shirey, General Merchandise.
"Minturn, Arkansas.

"Dear Sweet Niece May: I send you 20.00 come if you will Try what I wrote you I will pay you $5000.00 fore your service And if you Success i Will pay you duble That. it is not A big fee..............xx.............. i will pay you duble that. it is not a big fee fore I have paid that much before. I Hope the dr, Will not care fore helping me eny Thing you want To write since your Enitils and There will be no Danger i Lookk fore you at Onct Bring Hortence to i love Her like you.

yours Truly,
"A. W. Shirey."

"A. W. Shirey, General Merchandise.
"Minturn, Arkansas, Sept. 15, 1909.

"Dear May: I Received yours of the 8. I have been out on the Fars, Estimating The crops For A bout A Week past, Is why I did not Acknowledge Receipt of your letter sooner. If it will not In convenience You I will be glad to have you Call Mabe Hortence Can Eat out of the Skillet A time or two If she Still like it i want to settle with you when you can come. We find that the cotton here wil average no more than 7. OR 800 lbs. The corne is AN average Crop.

"A. W. Shirey."

"A. W. Shirey, General Merchandise.
"Minturn, Arkansas, Dec. 23, 1909.

"Dear niece: I did want you come and spend Christmas with me So we Could fix us Business but i am afrade it will note be safe for you to come. it Greaves my sould That I am fixed as I Am but it Seams to be my Destiny. It may End sometime if it dont i Will hope you are always Comefortable and hapy If i go first you will not want fore nuthing fore you and hortence Are Like my childered you Did what no lawyer could or would do for Me It is worth more Than I tole you i Would pay, Mabe you can meet Me in St. Louis when i go to buy spring Goods and we can settle then, I Will give you $5,000 Then any way and mabe can pay you the other $5,000.00 too I mean for to pay much More than This when my trouble ends. The more hapiness in the world The Better is is fore The World and all in it.

Yours truly,

"A. W. Shirey."

R. E. Jones testified, in substance, as follows: Mr. Shirey, some time in April or May, 1909, told me that the plaintiff had procured some letters or papers for him, and that he was going to pay her well for it; he said, "If she had not gotten those papers I would have been a ruined man, and probably would have lost my life."

Mrs. R. E. Jones testified, in substance, as follows: "Mr. Shirey invited me over to see Mrs. Briant one afternoon while she was visiting him. When I started to leave Shirey said he had employed her to do some work for him, that an old lady had taken a bunch of letters from him, and that if they succeeded in getting them back he would give her $10,000."

The plaintiff, being recalled, stated that the claim she filed in the probate court was sworn to by her before a notary public and was prepared by E. L. Jacobs. Other testimony will be stated or referred to in the opinion. The jury returned a verdict for the plaintiff for the full amount sued for and the defendant has appealed.

*H. L. Ponder, Stuckey & Stuckey* and *Campbell & Suits,* for appellant.

· 1.   The alleged contract was for the purpose of suppressing and concealing testimony, and is against public policy and void.   108 Ark. 171.

2.   The court erred in admitting incompetent testimony, viz., in permitting appellee to testify to transactions with the deceased; in permitting the postmaster at Minturn to testify to the contents of a record within the jurisdiction of the court, and not produced in court; in permitting witnesses to testify as to Shirey's method of constructing a letter on a typewriter, etc., and in permitting appellee to introduce in evidence letters designated as 1, 2 and 3.

(a)   As to transactions with deceased, see Sec. 2, Schedule to Constitution; 108 Ark. 171; 52 Ark. 550; 67 Ark. 318.

(b)   There was no foundation laid for the introduction of secondary evidence as to the contents of the record testified to by the postmaster.   95 Ark. 439; 87 Ark. 105; 86 Ark. 538; 85 Ark. 39; 82 Ark. 547.

(c)   The testimony as to Shirey's method of constructing a letter on the typewriter did not tend to prove the genuineness of the alleged letters.   It had no probative force whatever and was clearly misleading.

(d)   No foundation was laid for the introduction of copies of the alleged letters.   The evidence was incompetent and tended only to confuse and mislead the jury.

3.   The court erred in giving instruction No. 3, and permitting the case to go to the jury on a basis outside of appellee's account.

Instruction 4 was erroneous in that it permits a recovery for appellee's services, notwithstanding they were · unlawful, provided she did not know of the illegality *at the time of her employment,* making the time of employment the turning point.   It put too stringent a limit on the time when appellee's knowledge would debar her from recovery.

Instruction 8 was peremptory in appellee's favor and ignored appellant's principal defense, makes no reference whatever to *suppression* of evidence.

4. The court erred in instructing the jury orally after it had been requested to reduce the instruction to writing, and erred in eliminating the verified account from the case. Kirby's Dig., § § 108-132; Art. 7, § 23, Const. 1874.

*L. C. Going,* for appellee.

1. The contract was lawful. The evidence does not even tend to show that appellee undertook to procure the letters to enable deceased to win a divorce suit, nor any intimation that such letters were to be used in any such suit. *Opinion, former appeal.*

2. The testimony admitted was competent. That of appellee was not violative of section 2, Schedule to Constitution, and as to the registered letter containing the $20.00 bill, proof of that was made by the postmaster.

The postmaster's testimony was not secondary. He testified from his own knowledge, with his memory refreshed, as he had the right to do, by reference to the record. The witnesses who testified as to Shirey's method of constructing typewritten letters, qualified themselves to give an opinion by stating their long acquaintance with Shirey, to numerous business transactions with him, receipt of a great number of letters from him and their observation of his peculiarities in the construction of them. The value or weight of this testimony was for the jury. 99 Ark. 597; 88 Ark. 484; 62 Ark. 254; 81 Ark. 604; 78 Ark. 129.

The court properly admitted in evidence the copies of the letters designated as 1, 2 and 3. Sufficient proof of the loss of the original letters was made, and it was proved beyond question that these were literal, accurate, *verbatim* copies.

3. There was no error in instruction 3. See opinion on first appeal.

Instruction 4 is likewise in keeping with that opinion.

No specific objection was made to instruction 8, when given, and if it erred in not making reference to suppression of evidence, appellant can not complain of its omission now. But this particular point was covered in instruction 3. 93 Ark. 589; 87 Ark. 396; 148 S. W. 537; 148 S. W. 654; *Id.* 647; 69 Ark. 134.

There was no error in giving the simple oral instruction to the effect that the account and affidavit could only be considered for the purpose of determining what, if any, contract there was between appellee and Shirey, etc. 47 Ark. 407; 29 Ark. 268; 25 Mich. 380; 10 S. W. 257.

HART, J., (after stating the facts). It is contended by counsel for the defendant that the court erred in giving instruction No. 3, which is as follows: "Before you can find for the plaintiff in this case, you must find from a preponderance of the evidence that A. W. Shirey employed plaintiff to obtain possession of certain letters belonging to him which one Madame Rupert had in her possession, and that said letters were not to be used or suppressed as evidence by the said A. W. Shirey to enable him to win any suit there pending or contemplated to be brought, or, if to be used, the plaintiff had no knowledge or information of such intended use, and that said A. W. Shirey agreed to pay to plaintiff the sum of ten thousand dollars for her services in procuring or recovering the possession of the said letters and delivering the same to him; and that, in pursuance of said contract, plaintiff did procure from said Madame Rupert the possession of the letters so desired by the said A. W. Shirey and did deliver the same to him."

(1) On the former appeal, which is the law of the case, the court said: "Applying that principle to this case, if, as the testimony shows, the appellee, Mrs. Briant, entered into a contract with Shirey to procure evidence to win his divorce case, or to secure the possession of the letters for the purpose of preventing their use against him as testimony in the divorce case, the contract was illegal and void and can not be recovered upon. If, on the other hand, the procurement of the letters was the only service

to be performed by her, and she was unaware of any unlawful or immoral purpose on the part of Shirey in obtaining possession of the letters, and undertook for a consideration to obtain possession of the letters which he had written and delivered to Madame Rupert, then the contract was not illegal. In other words, if the only purpose was to recover the letters without any design on his part, known to her, to suppress them, and if the agreement did not embrace an undertaking to procure evidence to win the divorce case, then it was a valid contract.''

''There is some testimony indicating that Shirey feared the letters might be used in a criminal prosecution against him for unlawful use of the mails, and if it was shown that it was his purpose to get possession of the letters to suppress them as evidence, and that appellee was aware of and participated in that design, then the contract would be void. But, if Shirey merely endeavored to get the letters back to prevent them being unlawfully mailed to his wife, then it would be an innocent design and would not avoid the contract.'' *Josephs* v. *Briant,* 108 Ark. 171.

Again, counsel for the defendant contend that the judgment should be reversed because the court gave instruction No. 4, which is as follows: ''If you find from the evidence that the plaintiff agreed to procure or recover the possession of letters which Madame Rupert had in her possession, desired by said A. W. Shirey, and if you further find from the evidence that said letters were to be used in any lawsuit then pending or contemplated to be brought, then the contract between plaintiff and said A. W. Shirey was void, as against public policy, and she can not recover, provided you further find from the evidence that at the time of her employment she knew that said letters were to be so used or suppressed.''

The specific portion of the instruction to which objection was made is as follows: ''Provided, you further find from the evidence that at the time of her employment she knew that said letters were to be so used or suppressed.''

This instruction was in accord with the law announced in the former appeal. There the court said: "In other words, if the only purpose was to recover the letters, without any design on his (Shirey's) part, known to her (plaintiff), to suppress them, and if the agreement did not embrace an undertaking to procure evidence to win the divorce case, then it was a valid contract."

(2)   It is next contended that the court erred in giving instruction No. 8, which is as follows: "If, however, you find from a preponderance of the evidence that plaintiff was employed by the said A. W. Shirey to procure possession of certain letters which were then in the possession of one Madame Rupert, and that said Shirey agreed to pay her the sum of ten thousand dollars for procuring or obtaining the possession of same and delivering same to him, and you further find that said letters were not to be used as evidence in any suit then pending or contemplated to be brought, and that she was not employed to secure evidence which would enable him to win any suit then pending or contemplated to be brought, then you will find for the plaintiff."

It is insisted that the instruction is erroneous because it does not make any reference whatever to the suppression of evidence. It will be noted, however, that the other instructions given in behalf of the plaintiff specifically told the jury that the plaintiff could not recover if she knew that the letters recovered by her for Mr. Shirey were to be suppressed as evidence by him in his divorce suit between him and his wife.

The instructions given at the request of the defendant also contain this qualification, and it is insisted that the instruction is erroneous on the ground that it is contradictory to the other instructions. If the instruction on the part of the defendant had contained a qualification in regard to the suppression of evidence and none of the instructions given on the part of the plaintiff had contained such qualification, there would be much force in the contention of counsel for the defendant. Inasmuch, however, as all the other instructions given at the request

of the plaintiff contained this qualification, it is evident that the omission of it in the instruction now complained of was an oversight on the part of the court, and should have been made the subject of a specific objection. No specific objection having been made to the instruction, counsel for the defendant is not now in a position to complain of it. The court's attention should have been called to it by a specific objection, and if the court should then have refused to correct it, it would have been reversible error. They failed to make a specific objection and we are of the opinion that the judgment should not be reversed on that account.

See, to the same effect, *St. Louis, Iron Mountain & Southern Railway Company* v. *Carter,* 93 Ark. 589; *St. Louis, Iron Mountain & Southern Railway Company* v. *Puckett,* 88 Ark. 204.

(3) It is insisted that the court erred in permitting the postmaster at Minturn, Arkansas, to testify to the fact that A. W. Shirey sent a registered letter to the plaintiff at Hope, Arkansas. It was shown by the postmaster that he kept a record of all letters registered by him, but that it was against the regulations of the United States postoffice department to take these records out of the office. The postmaster was permitted to testify that A. W. Shirey sent a registered letter to the plaintiff at Hope, Arkansas, on the 26th day of April, 1909. The postmaster himself registered the letter and had personal knowledge of the fact that Mr. Shirey mailed the letter to the plaintiff at Hope, Arkansas. There was no error in permitting him to testify about matters of which he had personal knowledge.

(4) Counsel for the defendant insist that the court erred in permitting J. N. Childers and other witnesses to testify as to A. W. Shirey's method of constructing a letter on the typewriter, etc. Childers, and other witnesses on this question, testified that Shirey was an illiterate man, and had a peculiar way of spelling words and of arranging them in letters he wrote on the typewriter or otherwise. They were well acquainted with his meth-

ods of writing and testified that the letters introduced in evidence and which bore his signature were written by him.  This was competent evidence.  It is well known that many people, especially illiterate people, have a peculiarity in spelling and in the construction of their sentences, which is noticeable.  The witnesses testified that they were familiar with Mr. Shirey's method of writing and constructing his sentences, and the testimony was admissible as tending to prove that the letters examined by the witnesses were written by Shirey.  Of course, the jury were the judges of the probative force to be given the testimony.

(5)  Counsel next contend that it was error to permit copies of the letters to be introduced instead of the letters themselves.  It was shown that the letters were not in the possession of the plaintiff or of her counsel. Counsel for the defendant also testified that they did not know what had become of the letters.  It was shown that the letters were present at the first trial and were turned over to the stenographer to be copied into the bill of exceptions.  Both stenographers who were used at the trial testified that they did not know what had become of the letters, and that they were not then in their possession. The evidence before the court fully established that the letters were lost and there was no error in introducing copies of them.  The first and third letters introduced were signed on the typewriter and the second was signed with pen and ink.  It was shown by witnesses who saw the letter at the first trial that it bore the genuine signature of A. W. Shirey.

(6)  It is finally insisted by counsel for the defendant that the testimony of the plaintiff was incompetent because it involved a transaction with the deceased Shirey.  This we consider the most important question in the whole case.  Our Constitution, Schedule, section 2, provides that in civil actions no witness shall be excluded because he is a party to the suit or interested in the issue to be tried, provided that in actions by or against executors, administrators or guardians, in which judgment may be

rendered for or against them, neither party shall be allowed to testify against the other as to any transactions with or statements of the testator, intestate or ward, unless called to testify thereto by the opposite party.''

On the former appeal certain testimony given by the plaintiff, and which was copied into the statement of facts, was held to be erroneously admitted because it contravened this clause of the Constitution. But after a careful consideration of the testimony introduced on the retrial of the case, we are of the opinion that the testimony admitted is free from that objection. Here the plaintiff testified that she received three letters signed ''A. W. Shirey,'' and that one of them contained a twenty dollar bill; that the letters were postmarked at Minturn, Arkansas, and that the envelopes had on them what purported to be the printed letterhead of A. W. Shirey, and were received by her in due course of mail.

If Mr. Shirey were alive, he could not contradict the fact that she received the letters and that one of them contained a twenty dollar bill; he could only testify that he did not mail the letters to her. We hold that the admitted testimony was not a transaction with the deceased within the meaning of the clause of the Constitution above quoted. It must be admitted that the question is not free from doubt, but we are of the opinion that the objection to the testimony is met by the reasoning of the court in the case of *Daniels, Executor,* v. *Foster et al.,* 26 Wis. 686. In that case, in regard to a precisely similar contention, the court said:

''The question is, whether, after the death of the writer, it is competent for the party who receives a letter at a distant place to which it is addressed to testify to such receipt. The deceased party could not, from the nature of the transaction, have made any directly contradictory statement. He was a party to the transaction, but not an immediate party, at least to that part of it concerning which the proof is offered. The fact to be proved is not one of which he had any positive knowledge,

or which he could, if living, have positively denied. He could deny it indirectly or by inference only, by denying that he ever wrote the letter. But this would be testimony to another fact or point, as to which it is not proposed to examine the living party, and of which he has no positive knowledge. It is in the nature of circumstantial evidence so far as the testimony of the living party goes; and the question is, whether he can testify to a circumstance transpiring in the absence of the deceased, and of which the deceased had no knowledge and could not disprove except by denying the principal fact which the circumstance tended to prove, or by testifying to some other distinct fact or circumstance which would have an opposing or contradictory tendency and effect. The statute forbids the examination of a party, in his own behalf, in respect to any transaction or communication had personally by such party with a deceased person, against parties who are executors, administrators, etc., of the deceased. Laws of 1868, chapter 176. The case does not seem to come within the letter of the statute, and yet the communication was in some sense personal. But the personal transaction or communication of the statute, no doubt, means a transaction or communication face to face, or by the parties in the actual presence and hearing of each other. In every such case the statute excludes the testimony of the living party, upon the obviously wise and just ground that his adversary, whose cause of action or defense survives, and who was possessed of equal knowledge, and was equally capable of testifying to what the transaction or communication really was, has been removed by death, and so can not confront the survivor, or give his version of the affair, or expose the omissions, mistakes or perhaps falsehoods of such survivor. The temptation to falsehood and concealment, in such cases, is considered too great to allow the surviving party to testify in his own behalf. The law has, therefore, wisely excluded him. But this reason for the exclusion is not applicable to the present case, at least not fully applicable. Could we know that Mr. Fox, if living, would testify

'that he never wrote the letter in question—that it was a forgery—then indeed there would seem to be strong reason for excluding the testimony. But we do not and can not know this, and it is only by assuming the suppositious character of the letter, and that Mr. Fox would have so testified, that any appearance of hardship exists. Had Mr. Fox survived, this controversy might never have arisen. He might have acknowledged the genuineness of the letter, which is now the subject of such doubt and conflict of opinion, and might have freely forwarded the discharge therein spoken of. We can not say what he would have said or done respecting this now perplexing question, and can not indulge in any presumption either way, which shall influence its determination. The statute does not, unless by an interpretation obviously more liberal than its language and the plain intent of Legislature will admit, exclude the testimony of these defendants; and so we must hold that it was admissible, and must be considered upon the question under consideration.''

To the same effect see *Scarborough* v. *Blackman,* 108 Ala. 656, 18 So. 735; *Britt* v. *Hall,* 116 Ia. 564, 90 N. W. 340; *Sawyer* v. *Choate,* 92 Wis. 533, 66 N. W. 689; *Simmons* v. *Havens,* 101 N. Y. 427, 5 N. E. 73. See also note 21 A. & E. Ann. Cas. 1216, where authorities on both sides of the subject are reviewed.

After the jury had retired, but before it reached a verdict, it returned into court, and the court, over the objections of the defendant, further instructed the jury orally as follows:

''The plaintiff in this case sues on an alleged contract with the deceased A. W. Shirey. The account filed in the probate court and the affidavit thereto can only be considered by you in determining what the contract, if there was one between the plaintiff and A. W. Shirey, was * * * can only be considered in determining what the contract was. And if you find there was a valid contract between A. W. Shirey, the deceased, and the plaintiff in this case, you will have nothing at all to do with the mat-

ters set forth in the account, nor to consider it, and can only be considered by you in determining what the contract really was."

The defendant requested the court to give each of the following written instructions, towit:

"A.   The itemized account is the foundation of the plaintiff's case."

"B.   The itemized account is in evidence in this case and is to be considered by you with all the other evidence in the case."

"C.   All of the instructions in the case are to be considered by you as a whole and as applicable to such different parts or phases of the case as you may find from the evidence to be the facts in the case."

The court refused to give instruction A, but gave instructions B and C.

Thereupon, the court gave to the jury a written instruction No. D.   It is as follows:

"The plaintiff in this case sues on an alleged written contract with the deceased, A. W. Shirey.   The account filed in the probate court and the affidavit thereto can only be considered by you in determining what the contract, if there was one between the plaintiff and A. W. Shirey, was.   And, if you find there was a valid contract between A. W. Shirey, deceased, and the plaintiff in this case, you will have nothing to do with the matters set forth in the account, and it can only be considered by you in determining what the contract really was."

(7-8)   Counsel for defendant first insists that the court committed reversible error in giving an oral instruction when they had requested that it be reduced to writing.   It will be noted that in practically the same connection the court gave instruction No. D, which was reduced to writing.   The oral instruction and instruction No. D are in all essential respects the same, and we can not see how the defendant was prejudiced by the action of the court in giving the oral instruction.   The instruction was in other respects correct, and in connection with the other instructions submitted the case to the

jury on the principles of law decided on the former appeal. The account filed at the instance of the plaintiff was competent evidence as tending to show that the plaintiff knew that the letters which she recovered from Madame Rupert for A. W. Shirey were to be used by him in his divorce suit, or suppressed as evidence therein. The concluding part of the instruction told the jury that it might be considered by them in determining what the contract really was. By which was meant that it could be considered by them in determining whether the plaintiff knew the letters were to be suppressed as evidence or otherwise used for the benefit of A. W. Shirey in his divorce suit.

We find no prejudicial errors in the record and the judgment will be affirmed.