WALWORTH COUNTY STATE BANK, Respondent, v. TAYLOR et al, Appellants.

(224 N. W. 929.)

(File No. 6481. Opinion filed April 13, 1929.)

26

*Jorgenson & Anderberg*, of Sisseton, for Appellants.
*Bruell & Henderson*, of Redfield, for Respondent.

FULLER, C. On October 13, 1920, the defendants Elmer Bjerke and Anna Bjerke, being the owners of a tract of 200 acres of land in Day county, gave to one C. H. Taylor their warranty deed to the same as security for the payment, to Taylor, of three notes of the same date for $6,000, $12,000 and $6,000, respectively; said defendants being the makers of the first-mentioned note and one or both of them having indorsed the other notes. In June, 1924, Taylor, a former resident of this state, died at his place of residence in La Salle county, Ill. The defendants Frank, Robert, and Charles Taylor are his heirs, and the defendant Ottawa Banking & Trust Company was appointed administrator of his estate.

Claiming ownership of the first-mentioned note of $6,000 and the security of said warranty deed, given as a mortgage, the plaintiff Walworth County State Bank brought this action in foreclosure. It joined, as defendants, the mortgagors and makers and indorsers of the note, the said heirs of C. H. Taylor, deceased, the administrator of his estate, aforesaid, and one C. J. Myers, from whom plaintiff claims to have acquired the said note and security. Frank and Robert and Charles Taylor, the sons and heirs of C. H. Taylor, deceased, and the administrator, denied plaintiff's alleged ownership in the note and security, and, by counterclaim, demanded adjudication of ownership of the same in the administrator. From judgment in foreclosure sustaining the alleged title of plaintiff bank, and from order overruling motion for new trial, the defendants last mentioned appeal.

In its complaint the respondent bank alleged that after the execution of the note and deed to secure the same by Elmer and Anna Bjerke, "the defendant C. J. Myers became the owner of said note and sold and conveyed the same before maturity" to plaintiff. The defendant heirs and administrator, denying these allegations, alleged in substance that Myers, while acting as the agent of Taylor, transferred the note and conveyed the security of said warranty deed to respondent bank without the authority of his principal and in wrongful payment of the personal indebtedness of Myers owing to the bank. It is a conceded fact that on October 13, 1920, C. H. Taylor became the owner of three notes, including the note in dispute, which aggregated $24,000, and the rightful holder of the warranty deed given on that date by Elmer and Anna Bjerke to secure the payment of the same. To sustain its claim to the note of $6,000 and to the security, respondent relies on two theories, viz., a power of attorney from Taylor to Myers, and, also, certain transactions had by Myers with Taylor, the proof of which was considered by the trial court as competent and sufficient to sustain the assignment, of the note and security, by Myers to respondent.

The note of $6,000 was payable on its face to C. H. Taylor. On or soon after the 1st of March, 1924, it was delivered to respondent bank by Myers with indorsement written thereon as follows: "Pay to the Walworth County State Bank without recourse on me, C. H. Taylor, by C. J. Myers, his attorney in fact." At the

same time Myers made and delivered to the bank a quitclaim deed in the name of Taylor and executed as follows: "C. H. Taylor, by C. J. Myers, his attorney in fact." This deed contained a recital that it was given for the purpose of conveying all rights acquired by the grantor by reason of the warranty deed given by Elmer and Anna Bjerke to Taylor, above mentioned. The power of attorney, at that time held by Myers and delivered by him to the bank, so far as material here, provided: "That I, C. H. Taylor, of Conde, South Dakota, have made, constituted and appointed, and by these presents do make, constitute and appoint C. J. Myers, of Aberdeen, South Dakota, my true and lawful attorney for me and in my name, place and stead to demand, sue for, and receive all debts, moneys, securities for money, goods, chattels, legacies, or other property, real or personal, to which I am now or may hereafter become entitled, or which are now or may become due, owing or payable to me from Nels E. Bjerke of Cogswell, North Dakota, Elmer Bjerke and Anne Bjerke, husband and wife, and A. E. Bjerke of Day County, South Dakota, or any of them, to adjust settle, compromise, or submit to arbitration any accounts, debts, claims and demands, disputes and matters which are now subsisting or may hereafter arise between me and said Bjerkes or any of them and in my name to give effectual receipts and discharges for the same. * * * And that I grant and give unto my said attorney full authority and power to do and perform all and every act and thing whatsoever requisite and necessary to be done in the premises, as fully to all intents and purposes as I might or could do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that my said attorney shall lawfully do or cause to be done by virtue hereof."

There can be no doubt that a power of attorney to demand, sue for, and receive all debts, moneys, securities, and property of the principal and to adjust, settle, compromise, or arbitrate accounts, debts, claims, and demands, and to give receipts and discharges for the same, does not invest the agent with authority to indorse, in the name of the principal, and to transfer, a promissory note payable to the principal, or to convey or assign a real estate mortgage which is security for the payment of the same. Rigby v. Lowe, 125 Cal. 613, 58 P. 153, 154; Ellis v. Arnold (Tex. Civ. App.) 258 S. W. 570, 572; Kelly v. Pelt (Tex. Civ.

App.) 220 ,S. W. 199, 202. This court, in ;Shull v. New Birdsall Co., 15 S. D. 8, 14, 86 N. W. 654, 655, quotes approvingly from a standard text as follows: "Third parties dealing with an agent are put upon their guard by the very fact, and do so at their own risk. They cannot rely upon the agent's assumption of authority, but are to be regarded as dealing with the power before them, and must, at their peril, observe that the act done by the agent is legally identical with the act authorized by the power."

And it is a rulé of general application that: "Authority to an agent to collect or receive payment of a note or other demand does not imply authority to sell, transfer, or otherwise dispose of it." 1 Mechem on Agency, § 960.

Respondent cites the case of Miller v. Berry, 19 S. D. 625, 104 N. W. 311, and points to the rule that the assignment of a debt carries with it the security by operation of law. But, so far as the power of attorney is concerned, it is clear that the endorsement and transfer of the note was not within the powers expressed therein or to be implied therefrom. Even where an agent, authorized to sue for, collect, or compromise such paper, transfers the same to another for the purpose of suit, in behalf of the principal, the authorities first above cited hold his act to be without the express or implied terms of the power.

Aside from the power of attorney there is no evidence to overcome the presumption of continued ownership of the paper by Taylor and his legal representative except in proof of certain transactions had by the agent Myers with Taylor. Proof of these transactions was adduced by the plaintiff bank on cross-examination of Myers as an adverse party under the statute. Why Myers was joined as a defendant is not apparent from this record. Myers appears to have defaulted, if he was served with process, and the complaint is innocent of any allegation remotely suggesting a cause of action against him. By cross-examination of this witness respondent claims to have established that Myers was authorized by Taylor to turn over the Bjerke note and mortgage to respondent bank, with certain other items, in consideration of the release by the bank of one note of $7,000 by it held against Adale Myers and the release of notes of C. J. Myers held by the bank sufficient to make a total, with the A'dale Myers note, of about $16,000. And it is also claimed that Taylor, by agreement, was to and did receive

a note of Adale Myers payable to him in the sum of $7,000 and the note of C. J. Myers for an amount equal to the difference between $7,000 and the face of the securities of Taylor assigned to the bank. Adale Myers was the wife of C. J. Myers and a niece of C. H. Taylor. She was also a director of respondent bank at the time of the transaction in controversy, and C. J. Myers was a stockholder of the bank, having some years before been its president and managing officer.

It also appears that at the time Myers turned over the Bjerke note and security to the bank, about March 1, 1924, he delivered to the bank the assignment of a note and real estate mortgage held by Taylor against one W. G. Mathieu in the amount of $5,000, and assignment of a judgment in favor of Taylor against Kimmel and Mathieu in the amount of $4,200, the testimony having reference, apparently, to principal amounts. These items (and evidently a certificate of indebtedness against a failed bank in the amount of $6,100, concerning which the record is not clear) were received by the bank under regular assignment executed in person by C. H. Taylor. The mortgage note and the judgment above mentioned were later collected by the bank and the propriety and sufficiency of the transfer of the same in consideration of the release of the notes of Adale Myers and C. J. Myers to the bank is in no manner questioned.

While no express or implied authority existed under the power of attorney, above mentioned, for the indorsement and transfer of the Bjerke paper, by Myers, as attorney in fact, it may yet be assumed that, if Myers was independently authorized to make the transfer for the consideration above mentioned, the respondent bank could have acquired title, by delivery of the note which was enforceable in equity and that a transfer of the note would carry with it the security. Rev. Code, § 1551. But, aside from mere fragments of evidence quite inadequate to support the findings for respondent bank, all proof pertaining to the authority of Myers to transfer the Bjerke paper to respondent bank is in his testimony of a conversation and of correspondence by him had with Taylor. It would serve no purpose useful to the decision of questions of law here presented to review that evidence in detail, though it has been painstakingly examined. The utmost that may be said for respondent with respect to the Myers testimony is that, by the con-

versation and correspondence referred to, he acquired authority to exchange some of Taylor's securities for the notes of Adale and C. J. Myers at respondent bank. Due to the circumstance that no expression by Taylor of his intention, or understanding of the proposed transaction, conforms to the acts done by his agent, Myers, there is serious doubt that the evidence, viewed in a light most favorable to respondent, may be said to support the findings. But without formally questioning the sufficiency of the evidence to support the decision, the question here may be narrowed to this proposition: Whether an agent who holds the real estate mortgage and note of his principal for the purpose of collection, and who transfers the same to a third person in release of his own indebtedness to that person, may, in an action for the foreclosure of the security by the holder against the heirs and administrators of the decedent, be called by plaintiff to testify to his transactions with his principal, since dead, for the purpose of showing his special authority for the particular transfer.

Revised Code, § 2717, subd. 2, provides that: "In civil actions or proceedings by or against executors, administrators, heirs at law or next of kin in which judgment may be rendered or order entered for or against them, neither party nor his assignor nor any person who has or ever had any interest in the subject of the action adverse to the other party, or to his testator or intestate, shall be allowed to testify against such other party as to any transaction whatever with or statement by the testator or intestate, unless called to testify thereto by the opposite party."

▇▇ Although the witness Myers was named as a defendant in this case and called for examination by respondent under the statute (Rev. Code, § 2714) pertaining to cross-examination of adverse parties, it is not contended that this statute makes competent against his codefendant heirs and administrator the particular proof adduced from this witness, and the question here rests entirely on the provisions of section 2717 above quoted. In the application of statutes of this character it is a well-recognized rule that the real interest of the parties rather than their position on the record controls, and therefore parties whose interests are the same are not competent for each other merely because they are opposite by the circumstance of their joinder as parties. Whether parties are opposite within the meaning of section 2717, supra, de-

pends upon the relation they sustain to the particular issue in controversy. Dolan v. Dolan, 89 Ala. 256, 7 So. 425, 426; Martin v. Asher, 25 Ind. 237, 240; McCartin v. Traphagen, 43 N. J. Eq. 323, 11 A. 156, 159; Weinstein v. Patrick, 75 N. C. 344, 346; Eslava v. Mazange, 8 Fed. Cas. 780, 781, No. 4527.

"Courts of equity will disregard mere matters of form, and will look to the substance, and see on which side of the controversy the real interest of a party to the suit who is interested therein lies, and determine the competency of the witness from his interest in the case, regardless of the mere question of pleadings, when the question is as to his interest in the case. Were the rule otherwise, the effect and force of the statute could be evaded." Bardell v. Brady, 172 Ill. 420, 424, 50 N. E. 124, 125.

The important question therefore is whether Myers is a party or assignor of a party or a person who has or ever had any interest in the subject of the action adverse to the decedent or to defendant heirs or administrator of the estate of C. H. Taylor deceased. The subject of this action is the Bjerke note and mortgage. If Myers, as alleged in the complaint, had in truth become the owner of the paper and sold and conveyed the same to plaintiff, it might be necessary only to consider that such an assignor of the security is an incompetent witness. But the record shows that Myers never was the actual owner of the Bjerke debt and that his assignment of the same was under purported agency from Taylor. Indeed, it is contended by plaintiff that because Myers was an agent of Taylor and acting for Taylor in the transaction, he was a competent witness to testify for plaintiff as to his transactions with decedent. While authorities are not uniform on the competency under like statutes, of an agent of a person since dead, it may be said that the bare fact of his agency does not remove the restriction of the statute otherwise applicable against the testimony of a person who is, or has been interested, adversely to the administrator of the deceased, in the subject of the action. The decisions on the subject are largely controlled by particular statutes and the question commonly considered is whether the agent may be called to testify in behalf of the estate rather than against its interest.

Considering the proposition of principal importance to this appeal, it would seem that the very attempt of respondent bank to prove by Myers that he had such an interest in the paper and right

in its disposition that he could exchange it, in whole or in part, for his own debt, and the very attempt of respondent to base its title against the administrator upon that right and interest of Myers, would reveal the witness as one who once had an interest in the subject of the action adverse to the decedent or his estate. To sustain its claim the respondent bank must either consider Myers as the owner of the paper at the time of transfer, and therefore an assignor, or as an agent of the decedent with sufficient interest in the property of his principal to apply and dispose of the same to his own personal benefit, which is substantially equivalent. It is shown by Myers testimony, in part, that when he sought authority from Taylor, in conversation with the latter, to make the exchange of securities hereinbefore mentioned, he was already indebted to Taylor upon a promissory note secured only by 50 shares of the capital stock of respondent bank; that the bank was in a crisis and the banking department pressing for a collection of the Adale Myers and C. J. Myers notes, which were held by respondent; and that what was done with the bank would depend upon the disposition of the Myers paper. The witness also stated that, in his conversation with Taylor, he made references to the fact that Taylor had always assured him of a willingness to assist Myers when he needed help. It is clear that when Myers entered into the conversation and correspondence with Taylor and sought authority to use the Taylor securities to retire the Myers paper, he was either moved by the pressure for the collection of his own debt to respondent bank, or by the fact he was a stockholder in the bank to the extent of $5,000, or, perhaps, was influenced by a combination of these circumstances. In either event he was far from being impersonal in the transaction. From a bank in danger of passing into other hands for liquidation he at least procured the shift of his indebtedness to a more tolerant and indulgent creditor—and that without any substantial theory of benefit to the principal. Under many authorities Myers would be classified as a person adversely interested to defendants in the subject or event of the action by reason, merely, of his ownership of capital stock of the respondent bank, though our conclusion need not be based upon or considered an opinion upon that point. 5 Jones Commentaries on Evidence, § 2239, p. 4296. See Koch v. Chicago Nat. Life Ins. Co., 52 S. D. 601, 219 N. W. 478.

■ Sufficient for decision of the question here presented is the conclusion that an agent in possession of the securties of his principal for the purpose of collection, who transfers the same in whole or in part in retirement of his own debt to a third person, is, after the death of the principal, incompetent under Rev. Code, § 2717, to testify against the heirs and administrator of his principal as to his conversations or correspondence with the principal by reason of which he is claimed to have sought, and to have acquired, special authority for the transfer. As a witness for the purpose of such proof he is the equivalent of an assignor of the subject of the action where the controversy, as here, directly involves the ownership of the paper and is between his assignee and the representatives of his principal.

Whether the rule may be different in a case where the agent has or had no direct interest in the disputed transaction it is not necessary now to consider. In this case the act of the agent, the authority for which must be found in his testimony of his transactions with the principal, since dead, was clearly dictated by his individual interest in the premises, and the title of respondent assignee rests, as a matter of fact, on the claimed authority of the agent to dispose of his principal's security in a transaction of his own personal concern. Myers was an agent, but, as agent, he was not, in this case, an automaton responsive merely to the directions and interests of the principal.

■ Appellant stresses the point that, since C. J. Myers and Adale Myers gave to Taylor their notes in an amount equal to the indebtedness released by the bank, it would follow that Myers did not better his situation and that he had no personal interest in the transaction. But whether he did deliver the notes of himself and Adale Myers to Taylor is a disputed matter, and the finding of the trial court in this behalf is based entirely on the testimony of Myers that on March 10, 1924, he forwarded the notes of himself and wife to Taylor in an unanswered letter, mailed by him at Aberdeen, S. D., to Taylor and addressed to Earlville, Ill. This letter was proven by carbon copy produced by the witness Myers. The proof fails as incompetent for the reasons above stated. Within the inhibition of the statute, against testimony of an interested person to transactions with a decedent, no type of evidence could be more objectionable than an unanswered letter to the person since dead, with its contents proven by the writer's copy. 21 Ann. Cas.

1217; Josephs v. Briant, 115 Ark. 538, 172 S. W. 1002, Ann. Cas. 1916E, 747. Evidence of the contents of this letter was necessary, in proof of respondents' claim, to indicate knowledge in Taylor of the object and purpose of the Myers notes said to have been included therewith.

It is further argued by respondent that Taylor or his administrators received the Adale Myers and C. J. Myers notes, amounting to the face of the Taylor securities assigned to the respondent bank; that, by agreement, these notes were to be received in lieu of the Taylor's items so transferred; that the Myers notes were listed by defendant administrator in the inventory of the Taylor estate; and that no attempt at rescission was made by Taylor or his representatives. These circumstances are advanced as proof of ratification or estoppel. Certainly, with respect to this contention, it is clear that no tender of the Myers notes to the makers would serve any valid purpose. Myers had no control of the Bjerke note after its assignment to respondent bank. Myers could not respond to a rescission. Nor may it be said that an offer by the administrator to respondent bank, of the Myers notes payable to Taylor, would tend to place respondent in its former position. Though the point does not justify a complete recital of the evidence which, for reasons stated, should have been stricken on appellants' motion, it may be remarked: That the Myers notes to Taylor, being in a total of $16,409.15, would not conform in amount with the Taylor securities received by respondent, if the Bjerke note is treated as included therewith. Without the Bjerke note, Myers transferred to respondent the W. G. Mathieu mortgage of $5,000, the Mathieu-Kimmel judgment of $4,200, and, also, as it inferentially appears, a certificate of indebtedness on a failed bank of $6,100. The transfer of these items is not in dispute and respondent may not deny that, for these securities, Taylor or his estate is entitled to retain whatever consideration was received for the same from Myers.

For the reason stated there is not competent evidence to support the decision below, and a decree should have been entered sustaining the counterclaim of appellants. The judgment and order appealed from are reversed and a new trial granted.

SHERWOOD, P. J., and POLLEY, CAMPBELL, and BURCH, JJ., and MISER, C., sitting in lieu of BROWN, J., absent, concur.