MERRILL *v.* CITY OF VAN BUREN.

Opinion delivered September 25, 1916.

1. ANIMALS—RUNNING AT LARGE—VIOLATION OF CITY ORDINANCE.—In a prosecution for a violation of a city ordinance rendering it unlawful for certain fowls to run at large in a certain city, *held,* an instruction on the intent of the defendant in permitting certain fowls to run at large, properly covered the issue.

2. APPEAL AND ERROR—FAILURE OF TRIAL JUDGE TO REDUCE INSTRUCTIONS TO WRITING.—Trial judges should always reduce instructions given to the jury to writing, and a cause will be reversed when the court fails to do so when requested by either of the parties, except in cases where it affirmatively appears that no prejudice resulted from the failure.

3. NUISANCES—POWER OF CITY OR TOWN.—A municipal corporation cannot declare that to be a nuisance which is not such *per se.*

4.  MUNICIPAL CORPORATIONS—CONTROL OF FOWLS RUNNING AT LARGE
    WITHIN CORPORATE LIMITS.—A city ordinance "that it shall be un-
    lawful for any chickens, geese, turkeys, guineas, and like and similar
    fowls, to run at large within the corporate limits of" the said city,
    is a valid exercise of the right given to cities to cause any nuisance
    to be abated.

Appeal from Crawford Circuit Court; *James Coch-
ran*, Judge; affirmed.

*Sam R. Chew* for appellant.    *Park Crutcher* of
Counsel.

1.  If the power to pass this ordinance is not given
by Kirby's Digest, §§ 5438, 5450 and 5453, the ordinance
is void.  A municipal corporation has no powers except
such as are specifically delegated to it.  3 Ark. 114; 45
*Id.* 454; 27 *Id.* 467; 31 *Id.* 462.

2.  A cotton gin is not *per se* a nuisance.  93 Ark.
362.  A city has no power to prevent the sale of fresh
pork within its limits.  64 Ark. 424.  The running at
large of fowls is not a nuisance *per se*. 70 Ark. 12.

3.  If cattle or hogs while running at large are under
the supervision or care of some person it cannot be said
that they are running at large in violation of law.    27
S. W. 200; 124 Ind. 499; 27 N. E. 505; 24 Kans. 588;
63 Me. 468.

4.  In refusing to reduce its instructions to writing
the Court committed reversible and prejudicial error.
51 Ark. 177.

*E. L. Matlock*, City Attorney, for appellee.

1.  The city had power to pass the ordinance.
Kirby's Digest, §§ 5438, 5461; 70 Ark. 12.  It is a *reason-
able* regulation.

2.  There is no error in the instructions.  The word
"suffered" or "permit" as used means willful or inten-
tional.  The jury knew that chickens in charge of some
one does not constitute "running at large."  Taking all
the instructions together in connection with the evidence
the refusal to give No. 1 was not prejudicial.

3.  The taking down by the stenographer and reduc-
ing to writing, etc., of the Court's instructions is a sub-

stantial compliance with the spirit and intention of the constitution. The purpose was to preserve the instructions in the record. This court can see that no prejudicial error resulted. 51 Ark. 177, 47 *Id.* 407; 13 *Id.* 705; 25 Mich. 379-80.

SMITH, J. Appellant was convicted for a violation of an ordinance of the City of Van Buren which provides "that it shall be unlawful for any chickens, geese, turkeys, guineas, and like and similar fowls to run at large within the corporate limits of Van Buren, Arkansas." Section 2 of the ordinance reads as follows:

"That the running at large within the corporate limits of said City, above described, stock, fowls and animals, is hereby declared to be a nuisance and any owners or controller or manager of any of above-dsscribed animals who suffer the same to run at large as above specified shall be guilty of a misdemeanor and on conviction thereof in the City Court of said City fined in any sum not less than $5.00, nor more than $25.00 for each and every time that said owners or managers shall allow said animals to run at large as above specified he shall be guilty of a misdemeanor for each day thereof, each day constituting a separate offense."

Appellant denied that he had violated the ordinance, and he questions the authority of the city to enact it. He also says that error was committed by the court in refusing to reduce the instructions given by the court to writing, instead of giving them orally and having them reported in shorthand by the official court stenographer and later transcribed and filed with the bill of exceptions.

(1) Appellant complains of the action of the court in refusing to give an instruction requested by him numbered 1, which reads as follows:

"If defendant turned out either his chickens or ducks and guarded them while out then this would not constitute a violation of the ordinance in evidence."

If defendant turned out his chickens or ducks and guarded them while out, this would not constitute a violation of the ordinance in question. But the court

gave an instruction in which the jury was told that a conviction could not be had unless they found beyond a reasonable doubt that defendant suffered or permitted chickens or ducks or other fowls to run at large within the corporate limits of the City of Van Buren, and at appellant's request charged the jury that "the word 'suffered' or 'permit' as used in the ordinance and instructions means willful or intentional and unless you find from the evidence beyond a reasonable doubt that defendants willfully or intentionally permitted their chickens or ducks to run at large in the City of Van Buren your verdict should be one of not guilty."

It appears that appellant kept large numbers of domestic fowls for the market, and the evidence on behalf of the prosecution was to the effect that chickens, ducks and other fowls strayed away from appellant's barnyard, where the fowls were kept, and went unattended about the neighborhood. Appellant insists that he attempted to keep the fowls within his enclosure provided for that purpose, although he admits they were occasionally released to catch bugs and worms and that the ducks were released after rains, but he says they were always attended by some one.

We think the instructions set out made it plain that the penalty of the ordinance could be imposed only upon persons who willfully and intentionally permitted their fowls to run at large, and the term "running at large" is one of a well-defined meaning, and we think the jury could not have been misled as to the conditions under which appellant would be guilty of a violation of the ordinance.

The Constitution and statute of this State requires judges in jury trials to reduce their charges or instructions to writing at the request of either party. Article 7, Section 23, of the Constitution; Section 6196 of Kirby's Digest. And in the case of *Burnett* v. *State*, 72 Ark. 398, it was held that this provision was not complied with where the judge delivered his charge orally but directed the stenographer to take it down in short-

hand and afterwards copy it in longhand which was done after the trial. In the case cited it was said:

"It is probably true that most of the purposes for which this provision of the constitution was intended can be accomplished by the method adopted by the judge in this case. If the charge had been copied by the stenographer, and read by the judge to the jury before the case was finally submitted to them, it is probable that no prejudicial error would have been committed. *National Lumber Co.* v. *Snell*, 47 Ark. 407. But one purpose of this provision was to obtain a carefully considered charge and to place it in such shape as to avoid any possible dispute or misunderstanding as to its exact phraseology. Stenographers, like other persons, sometimes misunderstand what is said, and make mistakes; and, as comparatively few people can read shorthand, the parties under the procedure adopted in this case would ordinarily have no means of guarding against and detecting such mistake. An instruction reduced to writing is open to the inspection of every one, and is the safeguard which the law gives the litigant to protect himself against controversies of that kind. The provision that secures it is imperative, and, even if we deemed it unwise, we could not disregard or refuse to enforce it. For these reasons we are of the opinion that the course pursued did not fully meet the requirements of the law, and the contention of appellant in regard thereto must be sustained."

Another case which discusses the duty of circuit judges in this regard is that of *Mazzia* v. *State*, 51 Ark. 181, and in that case it was said:

"A judgment will not be reversed, however, for an unsubstantial error in this regard more than any other; as where provisions of the statute are read to the jury without being transcribed (*Palmore* v. *State*, 29 Ark. 268) or where the oral charge is simple and without complication and is accurately reduced to writing without unnecessary delay and is set out in the bill of exceptions. *National Lumber Co.* v. *Snell*, 47 Ark. *supra*. In such cases we can judicially determine that the error was not prejudicial. *O'Donnell* v. *Segar*, 25 Mich. 379-80. But when it does

not affirmatively appear that the error is harmless, we
cannot disregard the mandate of the constitution. The
right guaranteed by the fundamental law would be
worthless if it was incumbent on the defendant to show
that the charge was erroneous, because that error itself
would be ground for reversal. The object of the law was
to obtain a carefully considered charge and to prevent
any misconception and after-misunderstanding as to its
exact tenor and phraseology, when the bill of exceptions
came to be considered. *Barkman* v. *State*, 13 Ark. 705.''

(2) We would be compelled to reverse the judg-
ment of the court below because of the failure to reduce
the charge to writing if we did not think it affirmatively
appears that no prejudice resulted from the failure of the
court to reduce the instructions given to writing. Appel-
lant's instructions, both those given and those refused,
were in writing, while the ones given by the court were
few in number and simple in their nature and there was
no opportunity for disagreement about what the court had
declared the law to be. This is not a case where a copy
of the instructions would have been required in a discus-
sion before the jury of the law of the case as applied
to the evidence, nor one in which there was opportunity
for disagreement in settling the bill of exceptions. It
is, of course, proper always for the trial court to reduce
the instructions to writing and thereby obey the letter
of the Constitution and of the statute, and reversals must
follow the failure so to do when the request is made,
except in cases similar to this where it can be affirmatively
said that no prejudice resulted from that failure.

The remaining question in the case is the one of
real importance. The cities and towns of the State have
only such powers as are conferred upon them, either
expressly or by necessary implication, under the statutes
of the State. Express power has been given them to
prevent the running at large within their corporate limits
of cattle, horses, mules, asses, swine, sheep, goats, and
other animals of like kind. Section 5450 of Kirby's
Digest. Domestic fowls are not included in this grant
of authority. If such authority exists it is conferred by

Section 5438 of Kirby's Digest. So much of that section as is material here reads as follows:

"They (cities and towns) shall have power to prevent injury or annoyance within the limits of the corporation from anything dangerous, offensive or unhealthy, and to cause any nuisance to be abated. * * *"

(3) It has been several times said that a municipal corporation cannot declare that to be a nuisance which is not such *per se;* in other words, no mere *ipse dixit* can convert that thing into a nuisance which is not such in fact. As, for instance, a town or city has no right to declare the mere keeping of bees within the corporate limits a nuisance. *Arkadelphia* v. *Clark*, 52 Ark. 23. However, while it is settled that a town or city council cannot arbitrarily pass upon these questions, it is also settled that a large discretion abides with them in their determination of these questions. A leading case on this subject is that of *Foote, Ex parte*, 70 Ark. 12. There a town ordinance prohibited the keeping of a jackass within the city limits. It was there said that as no such express authority had been given the council, the ordinance could be upheld upon the theory only that the keeping of a jackass in a populous community was a nuisance *per se*, and upon a consideration of the habits of such animals and of the purposes for which they are kept it was held that the council had not exceeded its discretion in enacting that a jackass was a nuisance *per se*, and that the town council had the right to prohibit his being kept within the corporate limits. In this case definitions of nuisances, both public and private, are given, and it was there said:

"There are two kinds of public nuisances. One is that class of aggravated wrongs or injuries which affect the 'morality of mankind, and are in derogation of public morals and decency,' and being *malum in se*, are nuisances irrespective of their location and results. The other is that class of acts, exercise of occupations or trades, and use of property which become nuisances by reason of their location or surroundings. To constitute a nuisance in the latter class, the act or thing complained of

must be in a public place, or so extensive in its consequences as to have a common effect upon many, as distinguished from a few. Where it is in a city or town, where many are congregated and have a right to be, and produces material annoyance, inconvenience, discomfort, or injury to the residents in the vicinity, it is a public nuisance of the latter class."

The proof in this case shows that these fowls were very annoying to the owners of lawns and gardens in that vicinity. And where there are no fences it requires no great amount of proof to support a finding that gardens, whether flower or vegetable, will not flourish to any advantage where domestic fowls are permitted to run at large, and that the well-known habits of these fowls may prove very annoying, indeed, so exasperating as to put one to the choice of peace and friends on the one hand or flowers and vegetables on the other.

(4) No question is involved here of the right of one to keep fowls on his own premises. The question is whether the city has the power by ordinance to prevent the running at large of these fowls over the premises of others, and we think it possesses this right, and that the ordinance in question is a valid exercise of the right given to cause any nuisance to be abated.

McCULLOCH, C. J. (dissenting). I dissent from the conclusion expressed by the majority that permitting chickens to run at large in a city or town constitutes a nuisance *per se* and may be prohibited by ordinance of the municipality. The decision puts unrestrained chickens in a class with a jackass. *Foote, Ex parte*, 70 Ark. 12. A municipality, without express statutory authority conferred by the legislature, has no power to declare a thing to be a nuisance *per se* which is not in fact one in all circumstances, and the statutes of this state do not authorize a municipal corporation to prohibit the running at large of domestic fowls.

In *Arkadelphia* v. *Clark*, 52 Ark. 23, this court said: "Neither the keeping, owning, or raising of bees is, in itself, a nuisance. Bees may become a nuisance in a city,

but whether they are so or not is a question to be judicially determined in each case. The ordinance under consideration undertakes to make each of the acts named a nuisance without regard to the fact whether it is so or not, or whether bees in general have become a nuisance in the city."

So the running at large of chickens may or may not constitute a nuisance according to circumstances. In a thickly settled neighborhood where there are no fences, and unprotected flowers and vegetable gardens abound, full grown chickens running at large will necessarily cause damage to some extent, but not under other circumstances. There is a remedy under the law for those who suffer injury, and the remedy must be applied only when injury occurs—not by a sweeping provision declaring acts complained of a nuisance under all circumstances.