REED v. ROGERS.

Opinion delivered June 17, 1918.

1. SURETYSHIP—RELATIONSHIP BETWEEN SURETIES.—Where the relation of suretyship exists between joint promisors upon a bill or note, their relationship may be shown as between themselves. Contribution between sureties is required upon principles of equity, and the obligation to contribute is enforced as a legal liability growing out of the relationship.

2. TRIAL—INSTRUCTIONS—MUST BE REDUCED TO WRITING.—The requirements of the law are met when instructions given by the court are reduced to writing and subject to inspection by counsel at some time before the end of the trial.

3. TRIAL—INSTRUCTION—URGING JURY TO ARRIVE AT VERDICT.—It is not error for the trial court to give an instruction to the jury, while they are deliberating upon their verdict, urging upon them the importance of arriving upon a verdict. (St. Louis, I. M. & S. Ry. Co. v. Carter, 111 Ark. 284.)

Appeal from Crawford Circuit Court; Jas. Cochran, Judge; affirmed.

*Sam R. Chew,* for appellant.

1. The contract was in writing and parol testimony to vary its terms was not admissible. It was error to admit parol testimony that Rogers intended to sign as surety for appellant.

2. Appellant moved the court to reduce all the instructions to writing, and it was error to refuse. Const. art. 7, § 23; 72 Ark. 398.

3. The court erred in its instructions. The oral instruction on the court's own motion, after the jury had been out deliberating, invades the province of the jury in that it expresses the court's conclusion or opinion or a fact that should have been left to the jury. It assumes that Mr. Tuggle was desirous of obtaining money and getting surety upon note. It was too urgent in its insistence upon the duty of the jury to agree. Besides it was oral.

*J. E. London,* for appellee; *E. D. Chastain,* of counsel.

1. There is no error in the instructions. Appellant had no right to seek appellee and by specific agreement induce him to sign and then when it had served his purpose buy up the paper and compel his surety to account. A surety is in law a favored debtor. 48 Ark. 426.

2. Parol evidence was admissible to explain or qualify an unrestricted indorsement on commercial paper, or show the purpose. 86 Ark. 82; 93 *Id.* 379.

3. It is clear appellee signed the note for the accommodation of Reed. As between the original parties the maker may show that he signed for accommodation only (184 S. W. 36), and then appellant is estopped to maintain an action, and is estopped to deny that he induced appellee to sign. 55 Ark. 296; 89 *Id.* 349; 54 *Id.* 465; Bigelow on Estoppel, 572.

4. One is estopped to deny representations which were made by him and acted on by another to his injury. 24 Ala. 446; 53 Me. 348; 37 Mich. 476; 27 Tex. 231; 43 Ill. 33; 15 Ala. 91; 4 E. D. Smith, 296.

5. All the facts were submitted to the jury and they have found that appellee was the surety of appellant and this finding is conclusive. 97 Ark. 438; Ib. 486; 87 Id. 109. See also 95 Id. 172; 104 Id. 162; 100 Id. 330; 92 Id. 120; 103 Id. 4.

6. The instructions were all reduced to writing before the trial. 47 Ark. 407.

### STATEMENT OF FACTS.

This action was brought by the appellant against the appellee in justice court of Crawford County, to recover the sum of $77.50, with interest at 10%, the amount claimed to be due appellant on two promissory notes, one for $100 and the other for $75, dated March 13, 1915. The notes were in the usual form. The appellant and Rogers and one J. H. Tuggle appeared as joint payors and Thomas Smetz appeared as the payee.

Appellant testified that he owned the notes, having purchased the same before maturity from Thomas Smetz, paying therefor the sum of $155. He brought this suit against Rogers for one-half of that amount.

Witness Rogers and Tuggle signed the notes to Smetz. Over the objection of appellant the appellee was permitted to introduce evidence tending to prove that before he would sign the notes the appellant guaranteed him that he would not have anything to pay on the notes, if he signed them. Tuggle first asked him to sign the notes and he refused, then appellant said to appellee, "You sign this note, that is if it takes three names to get $50 at the bank, and I will see that you are never caused any trouble over it."

Over the objection of the appellant the court propounded to the appellee the following question: "Did you go on these notes for Reed as security for Reed and Reed as principal, or did you go on them for Tuggle as principal and you and Reed as security for Tuggle?"

Over the objection of appellant, appellee answered: "I went on it on Guy Reed's own statements after I had turned Tuggle down."

Appellant duly excepted to the ruling of the court in permitting this testimony.

The bill of exceptions shows that, after the testimony was in, appellant requested the court to reduce to writing all of the instructions prior to their being given to the jury. This the court declined to do. To which action of the court in refusing to reduce the instructions to writing prior to their being given to the jury appellant objected and excepted. The instructions were taken down by the court stenographer in shorthand and afterwards reduced to long hand before the trial ended, and were subject to the inspection and use of counsel.

The court on its own motion instructed the jury that if Rogers were surety to Reed then Reed could not recover but that if Rogers were surety to Tuggle then Reed could recover from Rogers one-half the amount Reed paid to purchase or satisfy the notes. The purport of the instructions is expressed in one of them as follows: "If Tuggle went to Rogers and asked Rogers to go as surety and Rogers refused then Reed said 'Rogers you go my surety and I will guarantee you will not have to pay,' then Rogers went on the note as surety to Reed, then Rogers ought not to be required to pay anything, but if Rogers and Reed took their chances together in going on the note with Tuggle as surety, of course, it would be perfectly fair for Rogers to pay his part of the loss Reed sustained by having to pay the notes."

The appellant objected and duly excepted to the ruling of the court in giving these instructions.

After the jury had been deliberating for some time they returned into court and the court gave them an oral instruction, which in effect told them that the question for them to determine was whether or not Rogers gave credit to Reed or to Tuggle. That if he gave credit to Reed then he ought not to have to pay the amount in suit, but that if he gave credit to Tuggle he ought to have it to pay. That a surety is a person who goes upon another's note to secure payment of that note and

he becomes liable to the payee for the entire amount of the note. That sureties are equally liable on the note to payee and that if one of the sureties pay all of the note the other must reimburse him for one-half, if there are just two sureties.

The appellant duly excepted and objected to the ruling of the court in giving this instruction and objected because it was not reduced to writing prior to its being given in accordance with appellant's request that all instructions be reduced to writing prior to their being given. Appellant then requested the court to instruct the jury, "That if Reed in fact guaranteed Rogers, unless that guarantee was in writing, it would not bind Reed." Which request the court refused and to which ruling of the court the appellant duly excepted.

The court then gave to the jury the following instruction: "Gentlemen, it is very important to both the defendant and the plaintiff that this case be decided. Some twelve men must decide this case. I do not know of any other twelve men in the county that would be more competent and capable to determine this case than you gentlemen. Don't go into the jury room with your minds so fixed in your opinion that you will not listen to what your fellow jurors say. If you do, there is no need for you to stay in there a moment longer, because if a man has his mind closed so he will not listen to the reasoning of his fellow jurors, you might as well quit. But let your mind remain open to be convinced by the argument or reason or logic of your fellow jurors to see whether or not they may not be right and you wrong. It is not an evidence of weakness of character or purpose for a man to change his opinion. In truth and in fact, it is evidence of the fact that a man thinks when he changes his opinion, because, if he never thinks, I know he will never change his opinion. All the progress of the world has been brought about by the changing of men's opinions. I don't mean that any of you jurors are to give up an honest conscientious conviction of what the truth is. The only thing I am asking you to do is

to hold your minds open to the argument of your fellow jurors so you will admit you are wrong, if you are convinced that you are wrong. I remember one important case where I changed my opinion. After I had made up my mind about what the law was, I studied over the matter and became convinced that I was wrong and was only too glad to correct my mistake.''

To the giving of the above instruction the appellant duly objected and excepted.

There was a verdict in favor of the appellee, and from the judgment rendered in his favor is this appeal.

WOOD, J., (after stating the facts). (1) ''There is no doubt that where the relation of suretyship exists between joint promisors upon a bill or note their relation may be shown as between themselves.'' 2 Daniel on Negotiable Instruments, sec. 1336; *Sloan* v. *Gibbes,* 56 S. C. 480, 76 Am. St. Rep. 559-560, and cases cited in note.

In *McGee* v. *Prouty et al.,* 50 Mass. (9 Metcalf) 547, it is said: ''The law respecting sureties and their obligations to contribute proportionally does not arise out of a contract between them but is founded on principles of equity, and the obligation is enforced as a legal liability growing out of the mutual relation.'' See also *First National Bank* v. *Reinman,* 93 Ark. 376.

The ruling of the court in giving and refusing the prayers for instructions and in admitting testimony was in conformity with the above doctrine.

(2) The provisions of the Constitution and statutes require judges in jury trials to reduce to writing their instructions on the request of either party. Art. 7, sec. 23, Constitution of 1874. Section 6196, sub-division 5, Kirby's Digest. These provisions were not violated by the trial court in its manner of instructing the jury in the instant case. While the instructions were not reduced to writing before they were given to the jury,. they were reduced to writing before the trial was ended and were subject to the inspection and use of the counsel.

In *National Lumber Co.* v. *Snell,* 47 Ark. 407, Chief Justice Cockrill, speaking for the court, says: "There is nothing in the Constitution or the statute making it incumbent upon the court to reduce to writing an instruction to be given to the jury on its own motion before argument to the jury. The attainment of justice requires that the court should be vested with a sound discretion to instruct the jury at any time, even after they have retired to consider of their verdict. See also *Burnett* v. *State,* 72 Ark. 398-400.

(3) The appellant insists that the court erred in giving to the jury an oral instruction after they had been deliberating upon their verdict urging upon them the importance of reaching a verdict. The objection to this instruction was general. Appellants did not object to the instruction because it was not in writing, and, indeed, there is nothing in the record to indicate that the instruction was oral. This instruction did not invade the province of the jury. It expressed no opinion on the merits of the case. The instruction comes within the rule announced by this court in *St. Louis, I. M. & So. R. Co.* v. *Carter,* 111 Ark. 284, as follows: "The rule is well settled in this State that the trial court may detail to the jury the ills attendant on a disagreement and the importance of coming to an agreement. The trial judge should not by threat or entreaty attempt to influence the jury to reach a verdict. He should not by word or act intimate that they should arrive at a verdict which is not the result of their free and voluntary opinion and which is not consistent with their conclusions. He may, however, warn them not to be stubborn and to lay aside all pride of opinion and to consult with each other and give due regard and weight to the opinion of their fellow jurors." *Jackson* v. *State,* 94 Ark. 169-175. See also 1 Blashfield's Instructions to Juries, ch. 21, p. 533, where cases to this effect in other jurisdictions are cited.

The judgment is correct, and is, therefore, affirmed.