SNEED *v.* STATE.

Opinion delivered March 29, 1920.

1. JURY—DISQUALIFICATION OF JURORS.—Unless jurors have formed or expressed an opinion against an accused based upon statements made to them by witnesses in the case, or have fixed opinions based upon hearsay testimony or rumor, which it would take evidence to remove, and which they can not disregard, or unless they have bias or prejudice for or against him, they can not be regarded as disqualified to sit as jurors in the case.

2. CRIMINAL LAW—CONCLUSIVENESS OF FINDING AS TO JUROR'S QUALIFICATION.—On motion for new trial on ground that a juror was disqualified by reason of having formed and expressed an opinion that accused was guilty, a finding of the court, on conflicting evidence, that the juror was not disqualified is conclusive.

3. CRIMINAL LAW—EVIDENCE—OTHER CRIMES.—In order to justify the admission of evidence of other crimes, the evidence should be of sufficient probative force to arouse a reasonable belief in the minds of the jurors that other crimes were committed and that the accused committed them, and such evidence can not be admitted if it is so vague and uncertain as to create suspicion only.

4. CRIMINAL LAW—OBJECTIONS TO EVIDENCE—WAIVER.—In a trial for wife murder, accused did not waive objections to incompetent evidence of other crimes, for which the State claimed he was responsible, by introducing evidence explanatory of such incompetent evidence.

Appeal from Craighead Circuit Court, Jonesboro District; *R. E. L. Johnson,* Judge; reversed.

*J. F. Gautney, F. C. Mullinix* and *J. H. Hawthorne,* for appellant.

1. The court erred in its ruling as to the qualifications of jurors. 70 Ark. 127; 131 *Id.* 325; 132 *Id.* 521; 134 *Id.* 68; 135 *Id.* 522; 103 *Id.* 23; 113 *Id.* 304; 45 *Id.* 165; 56 *Id.* 381; 102 *Id.* 180.

2. The juror, A. J. Glenn, was clearly disqualified. 102 Ark. 180; 66 *Id.* 63; 72 *Id.* 158; 85 *Id.* 72; 120 *Id.* 204.

3. The court erred in refusing to exclude the evidence as to the death of Mrs. Jinks, Annie May Griffith and the child of defendant. 16 C. J. 592, § 1142; 110 N. E. 456; Ann. Cases, 1912 D, 191.

4. The court erred in refusing to instruct the jury on the subject of circumstantial evidence.

*John D. Arbuckle,* Attorney General, and *J. B. Webster,* Assistant, for appellee.

1.   J. W. and E. C. Gambill, Metcalf and Jackson were competent jurors.   103 Ark. 21-23; 66 *Id.* 53; 79 *Id.* 131; 114 *Id.* 472; 109 *Id.* 450; 47 *Id.* 180; 79 *Id.* 127; 66 *Id.* 60; 104 *Id.* 616.

2.   The court did not err in refusing to set aside the verdict on account of the juror, Glenn.   The court believed Glenn, and its action will not be disturbed.   131 Ark. 404; 133 *Id.* 16-24; 120 *Id.* 193; 86 *Id.* 64; 72 *Id.* 158.

3.   Evidence with reference to the deaths of Mrs. Jinks, Annie May Griffith and the child of Sneed, was admissible.   117 Ark. 296; 120 *Id.* 458-461; *Ib.* 157; 113 *Id.* 347-352; 110 *Id.* 226; 130 *Id.* 355; *Ib.* 462; 72 *Id.* 586; 84 *Id.* 119; 81 *Id.* 25; 75 *Id.* 427; 2 *Id.* 229; 130 *Id.* 363; 87 *Id.* 17; 16 N. E. 452; 3 S. W. 329; 52 N. W. 783; 99 Pa. St. 388; 106 *Id.* 247; Ann. Cases, 1917 D, 622; 91 N. W. 898; 65 *Id.* 203; 7 So. 302, 312; 63 Ga. 395; 6 Enc. of Ev. 675.   The admissibility of evidence of other crimes is in the sound discretion of the court.   150 U. S. 57, and cases *supra.*

4.   Circumstantial evidence was clearly admissible along with the positive evidence offered.   138 U. S. 353;

5.   The evidence of Doctor Altman as to conversations between himself and defendant as to insurance upon the life of Annie May Griffith was admissible.

6.   Appellant is not in position to complain of the evidence with reference to the deaths of Mrs. Jinks, Annie May Griffith and the baby.   75 Mo. App. 204; 4 C. J. 720; note B.; 88 Ark. 848; 75 Mo. App. 204; 97 Mo. 137; 111 Ark. 569; 123 *Id.* 318; 100 *Id.* 154; 67 *Id.* 57; 132 *Id.* 518; 79 *Id.* 455; 20 *Id.* 232; 32 *Id.* 346; 90 *Id.* 509; 83 *Id.* 331; 76 *Id.* 280.

7.   The evidence is conclusive of Sneed's guilt and he made no defense.

8.   There was no error in refusing instruction No. 9, asked by appellant, and No. 12 was not abstract.

HUMPHREYS, J.   Appellant was indicted, tried and convicted in the Craighead Circuit Court, for murder

in the first degree, by unlawfully, feloniously, wilfully, of malice aforethought, and after deliberation and premeditation, administering strychnine to his wife, Cora Sneed, and his punishment therefor fixed at life imprisonment. From the judgment of conviction, an appeal has been duly prosecuted to this court.

A reversal of the judgment is first sought on account of alleged erroneous rulings of the court as to the qualification of certain jurors. The court overruled appellant's challenge on the ground of disqualification to each of the jurors, J. W. Gambill, E. C. Gambill, W. R. Metcalf and W. N. Jackson. The Gambills had formed and expressed an opinion as to the guilt of appellant, which it would require evidence to remove, from talking to a number of persons and listening to discussions of others in Jonesboro and reading accounts in the newspapers of the alleged murder unfavorable to appellant. W. N. Jackson had formed a strong opinion against appellant, which it would require evidence to remove, from reading the newspapers and talking with persons about the case. W. R. Metcalf stated that he had formed an opinion as to the guilt of appellant, which it would require strong evidence to remove, after talking to two witnesses, whose statements he could not remember, and after reading a statement of all the facts in the newspaper unfavorable to appellant. All the jurors stated that they could, and would, disregard the several opinions formed by them and go into the jury box and give appellant a fair and impartial trial and decide his guilt or innocence on the law and evidence adduced. None of them testified to any bias or prejudice against appellant. Unless jurors have formed or expressed an opinion against an accused, based upon statements made to them by witnesses in the case, or have fixed opinions based upon hearsay testimony or rumor which it would take evidence to remove and which they can not disregard, or unless they have bias or prejudice for or against him, they can not be regarded as disqualified to sit as jurors in the case. *Jackson* v. *State,* 103 Ark. 21; *Bealmer* v. *State,* 104 Ark. 616; *Davidson* v.

*State,* 109 Ark. 450; *Dewein* v. *State,* 114 Ark. 472. Under the several rules announced in the cases just cited, none of the jurors in the instant case were disqualified to sit, and the court properly overruled the challenge of appellant to them for alleged disqualification.

A reversal of the judgment is also contended for because the court overruled the motion to set the verdict aside, alleging that A. J. Glenn, who qualified as a juror, had theretofore formed and expressed an opinion that appellant was guilty and that killing was too good for him. This motion was supported by the affidavits of J. W. Fricka, J. H. Edwards and Ben Flowers, who reside at Nettleton, Arkansas. The affidavits of the three are in conflict as to statements attributed to A. J. Glenn. A. J. Glenn appeared in open court and gave testimony, denying the statements attributed to him in the affidavits. The court ruled that the juror was not disqualified. There is nothing to show that the finding of the court was arbitrarily made. For that reason, the finding of the court is binding upon this court on appeal. The court did not commit reversible error in overruling the motion. *Van Hoozer* v. *Butler,* 131 Ark. 404; *Wright* v. *State,* 133 Ark. 16.

It is insisted that the court committed reversible error in admitting evidence, over the objection and exception of appellant, relating to the deaths of Mrs. Jinks, Annie May Griffith and appellant's baby. Mrs. Jinks was appellant's mother-in-law, resided with him, and died on November 6, 1915, from uremic poisoning, according to the evidence of Dr. W. A. Bone. The State was permitted to prove that Mrs. Jinks was taken sick about noon and died at 5 o'clock the next morning; that she was unconscious most of the time; that Doctor Bone administered morphine hypodermically to prevent convulsions; that appellant said to him, "Shoot her again, Doc, before she has another one;" that, after death, her body was swollen and spotted.

Annie May Griffith was an adopted daughter of appellant, resided with him and died in November, 1918,

of influenza during that epidemic, according to the diagnosis and opinion of Doctor Bone. The State was permitted to prove that during her illness, she would jerk and grab her hands and that her feet would draw; that a policy of insurance was obtained on her life for $2,500, payable in installments of $25 per month after death to appellant's wife, Mrs. Cora Sneed; that Dr. J. T. Altman was connected with the insurance company that issued the policy, and, in conversation with him after the death of the child, appellant threatened to sue the company, and then offered to compromise the claim; that no compromise was made, insurance paid, or suit brought to collect the claim.

The Sneed baby was taken sick the day before, and died on March 20, 1919, of uremic convulsions, caused by locked bowels, according to the opinion of Doctor Lutterloh, the attending physician. The State was permitted to prove that, immediately after death, spots appeared on its neck and breast, and then quickly all over the body.

The evidence offered by the State tended to show that appellant murdered his wife by administering strychnine to her, the motive being to collect insurance in a large sum carried on her life for his benefit. The symptoms with which she died were indicative of death resulting from strychnine poisoning. The symptoms consisted, in part, of frequently recurring violent convulsions, during all of which time she was conscious and could not stand to be touched. Indicative also that death resulted from strychnine poisoning, blue spots appeared upon her neck, breast and abdomen immediately after death.

The theory of the State was that appellant murdered the four persons by poisoning, in order to obtain their property and collect on insurance policies. The evidence disclosed that Mrs. Jinks was a woman of means; that, after Mrs. Jinks' death, from whom his wife inherited an estate, she executed a will devising her property to him; that the baby was born after the execution of the will and not mentioned therein; that his wife carried a number of insurance policies, in which he was named as

the beneficiary; that the adopted daughter was insured for the benefit of appellant's wife.

The State concedes the rule of evidence that one crime can not be established by the proof of another, but justifies the introduction of evidence in relation to the death of Mrs. Jinks, Annie May Griffith and the Sneed baby upon the ground that it tended to establish the motive or intention essential to constitute the crime charged against appellant. In order to justify the admission of this character of evidence in support of intention or motive, the evidence should be of sufficient probative force to arouse a reasonable belief in the minds of the jurors that other crimes were committed and that the accused committed them. Such evidence can not be admitted if in character it is so vague and uncertain as to create suspicion only. We do not think the evidence, offered by the State in relation to the deaths of Mrs. Jinks, Annie May Griffith and the Sneed baby possessed probative force sufficient to induce a reasonable belief that they died from strychnine poison or that it was administered by appellant. The court therefore erred in admitting evidence relating to their deaths.

It is insisted, however, that appellant nullified and waived his former objections and exceptions to the introduction of the State's evidence in relation to the deaths of Mrs. Jinks, Annie May Griffith and the baby by subsequently permitting evidence precisely similar to go to the jury without objection, and partially through some of his own witnesses and himself. The major portion of the evidence offered by the State in relation to the deaths of the three persons was strenuously and persistently objected to by appellant. It is true that a part of it got into the record without objection and through the medium of his own witnesses and himself, but it was evidence explanatory of the State's incompetent evidence admitted over appellant's objection, rather than a manifestation on the part of appellant to surrender his former objections and exceptions thereto. We do

not think appellant waived his right to insist upon his objections in this regard.

There are other assignments of error insisted upon for a reversal, which we deem it unnecessary to discuss, as they will not likely arise again on a new trial.

For the error in admitting the evidence in relation to the deaths of Mrs. Jinks, Annie May Griffith and Sneed's baby, the judgment is reversed and the cause remanded for a new trial.