LEGGETT *v.* STATE

4863                                    299 S. W. 2d 59

Opinion delivered February 18, 1957.

[Rehearing denied March 18, 1957.]

*John W. Bailey,* for appellant.

*Tom Gentry,* Attorney General, and *Thorp Thomas,* Assistant Attorney General, for appellee.

GEORGE ROSE SMITH, J. The appellant was convicted of murder in the first degree and was sentenced to death. Among many objections made during the trial the main ones relate to the selection of the jury, the denial of a request for a change of venue, and the court's instructions to the jury.

It is apparent from the record that news about the crime and its investigation had been extensively reported in the press and by radio and television. Many veniremen who had formed opinions on the basis of such reports were excused by the court, but the appellant insists that four jurors whom he challenged for cause should also have been rejected. Each of these four men stated in substance that he had formed an opinion about the case and that evidence would be required to remove his opinion, but upon further questioning each man also declared that he could lay aside his preconceived view and try the case impartially upon the law and the evidence.

It is settled by many decisions that a tentative opinion of this kind, based upon newspaper reports and the like, does not disqualify a prospective juror. The appellant relies chiefly upon the early case of *Polk* v. *State,* 45 Ark. 165, but that decision was disapproved in *Hardin* v. *State,* 66 Ark. 53, 48 S. W. 904, and has not been followed in any later case. *Sneed* v. *State,* 143 Ark. 178, 219 S. W. 1019; *Howell* v. *State,* 220 Ark. 278, 247 S. W. 2d 952. Nor was one of these four men shown to be disqualified by his statement on *voir dire* that on the issue of the accused's asserted insanity he would be guided by the medical testimony. Upon its being explained that the opinions of lay witnesses might also be offered in evidence this juror expressed his willingness to give such testimony whatever credit he thought it entitled to receive.

The first four days of the trial were devoted to the selection of the jury. On the third day the appellant filed a written motion for a change of venue, supported by two affidavits, and the testimony of these affiants was offered on the fourth day. One of these witnesses said in effect that the homicide had been widely publicized and that there was a general belief throughout the county that Leggett was guilty. The other expressed the same thought, although it developed on cross-examination that his knowledge was largely limited to the attitude prevailing in two wards in Little Rock. At this point in the trial eleven jurors had been chosen. In denying the motion the judge expressed his confidence in the impartiality of these eleven and his belief that the panel would soon be completed, which proved to be the case.

It cannot be said that the court abused its discretion in refusing to order a change of venue. What the statute requires is a showing that the minds of the inhabitants of the county are so prejudiced against the accused that a fair trial cannot be had. Ark. Stats. 1947, § 43-1501. Formerly the court was restricted to determining the credibility of the affiants supporting the motion, but the 1936 revision of the statute permits the court to ascertain whether the allegations of prejudice are well founded. *Robertson* v. *State*, 212 Ark. 301, 206 S. W. 2d 748. Here the trial judge had listened for more than three days while hundreds of veniremen were searchingly examined under oath. In deciding whether the appellant's two witnesses had correctly estimated the local sentiment the court was entitled to consider the views of scores of citizens already heard. Although many veniremen had reached positive conclusions from what they had read or heard, there is no indication that the news reports were biased or represented a studied effort to inflame the public. *Meyer* v. *State*, 218 Ark. 440, 236 S. W. 2d 996. Despite the defendant's theory that it was impossible to obtain a fair-minded jury within the county, the court was convinced by testimony heard at firsthand that this goal had almost been reached. In these circumstances the conclusion that the

asserted prejudice did not exist lay well within the limits of the court's discretionary authority.

On the merits it is contended that the court erred in refusing to charge the jury on the lesser offense of murder in the second degree. Whether that instruction should be given depends in every case upon the evidence. Here the deceased, Joe King, was a fourteen-year-old boy who lived with his mother and stepfather about a mile from Jacksonville. On the night of December 23, 1955, young King went to a picture show in Jacksonville and was last seen by his friends as he started home alone. His body was found four days later in woods near the highway about three and a half miles from the city. An autopsy showed that bruises on his face had been inflicted before he died and that death was caused by strangulation.

Leggett was questioned in January and confessed his guilt. His narrative is the only direct evidence of the exact manner in which the crime was committed. Leggett said that he picked up King, who was hitchhiking, and offered to drive him to his home. Leggett at first stated that the boy called him a son of a bitch when he drove past the place which the boy pointed out as his home. Leggett hit King in the face twice with his fist, dazing him, and then drove to the spot where King's body was found. There he choked the boy until he thought he was dead and dragged the body to a thicket. On his way back home Leggett threw King's pocketbook into some weeds by the road. In his confession Leggett described the place where the wallet was thrown; he later went with the officers to the scene, and the pocketbook was just where he said it would be. In a second account of the crime Leggett said that King refused to engage in an act of sexual perversion and that he killed the boy for fear that he would report the matter.

Upon this proof the court was not required to charge the jury on the lesser degrees of homicide. A similar situation was presented in *Alexander* v. *State,* 103 Ark. 505, 147 S. W. 477, where, as here, the defense was a plea of insanity, the accused did not testify, and the defendant's

proof was directed to the issue of his mental capacity. In upholding the trial court's decision to submit a form of verdict for first degree murder only we said: "However, in the present case it would not have been error for the court to refuse to charge the jury as to the degrees of homicide lower than murder in the first degree; for, according to the undisputed evidence, appellant was guilty of that crime, if he was of sufficient mental capacity to commit it . . . Without any provocation except an epithet, he went off and armed himself with a pistol, returned in twenty or thirty minutes to the place where he had left his intended victim, and deliberately slew him." Other cases applying the principle include *Jones* v. *State,* 52 Ark. 345, 12 S. W. 704, and *Clark* v. *State,* 169 Ark. 717, 276 S. W. 849.

Another point urged for reversal centers upon the court's action in giving an oral instruction to the jury after counsel for the accused had asked that the instructions be in writing. Ark. Const., Art. 7, § 23. At the defendant's request the court had given a written instruction submitting four possible verdicts, the first one being: "We, the jury, find the defendant guilty of murder in the first degree, as charged in the information, and fix his punishment at death by electrocution." (The other three related to a finding of guilty with the punishment of life imprisonment, a finding of not guilty, and a finding of not guilty by reason of insanity.) After deliberating for two hours the jury returned to the courtroom and asked, among other things, that this instruction be read again, which was done. When the jury again retired the court recalled them, apparently at once, and added this oral charge: "I am going to instruct you further, gentlemen, that if you find the defendant guilty of murder in the first degree, as charged in the information, and you desire that he suffer the death penalty, you may also bring in a verdict, 'We, the jury, find the defendant guilty of murder in the first degree, as charged in the information,' and stop—that automatically imposes the death penalty and it is the duty of the Court to sentence him. You have that other alternative."

After the jury had again left the courtroom the defense objected to the charge's having been oral. There was no request that the supplemental instruction be reduced to writing, which, if accomplished before the end of the trial, would have complied literally with the constitutional requirement. *Reed* v. *Rogers,* 134 Ark. 528, 204 S. W. 973. Within fifteen or twenty minutes the jury returned a verdict in the form described in the oral instruction. The members of the jury were polled, and all answered that this was their verdict.

Even though the court's procedure may not have satisfied a strict interpretation of the language in the constitution, it is readily apparent that no prejudice could possibly have resulted. The constitution contemplates that the court will have some freedom in the matter of giving instructions on its motion after the jury has retired. *National Lbr. Co.* v. *Snell,* 47 Ark. 407, 1 S. W. 708. Here the oral instruction was short, clearly worded, and an accurate statement of law. The complaint is merely that it was not read from a piece of paper or reduced to writing at once. This situation falls within our ruling in *Merrill* v. *City of Van Buren,* 125 Ark. 248, 188 S. W. 537, where it was said: "We would be compelled to reverse the judgment of the court below because of the failure to reduce the charge to writing if we did not think it affirmatively appears that no prejudice resulted from the failure of the court to reduce the instructions given to writing. Appellant's instructions . . . were in writing, while the ones given by the court were few in number and simple in their nature and there was no opportunity for disagreement about what the court had declared the law to be. This is not a case where a copy of the instructions would have been required in a discussion before the jury of the law of the case as applied to the evidence, nor one in which there was opportunity for disagreement in settling the bill of exceptions. It is, of course, proper always for the trial court to reduce the instructions to writing and thereby obey the letter of the Constitution and of the statute, and reversals must follow the failure so to do when the request is made, except in cases similar to this where it

can be affirmatively said that no prejudice resulted from that failure."

We have painstakingly examined the record and have considered all the points raised. It is our conviction that the appellant received a fair trial and that the court below committed no reversible error in the proceeding.

Affirmed.